**UNITED STATES of America,**
**Appellee,**

v.

**Grant FOSTER, Appellant.**

**No. 8557.**

United States Court of Appeals
Fourth Circuit.

Argued June 15, 1962.

Decided Oct. 9, 1962.

See also 4 Cir., 296 F.2d 249; D.C., 197 F.Supp. 387.

George Cochran Doub and Herbert H. Hubbard, Baltimore, Md. (Weinberg & Green, Baltimore, Md., on brief), for appellant.

Stephen H. Sachs, Asst. U. S. Atty., and Joseph D. Tydings, U. S. Atty., for appellee.

Before SOBELOFF, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge.

Evasion of income taxes for 1952 and 1953 by Grant Foster, a citizen of the United States residing in Venezuela, was the verdict of the jury upon which he was sentenced in the judgment of the District Court from which he now appeals. Int.Rev.Code of 1939, § 145(b), 26 U.S.C.A. § 145(b). Acquittal was returned on two counts for failing to file returns for 1955 and 1956. The errors he assigns for reversal of the conviction do not require us to assay the proof against him, for they are directed to (1)

the constitutionality of the statute prescribing the taxability of income received abroad, (2) the bar of the time limitation of law upon the prosecution and (3) the admission of evidence—purporting to prove intent or consciousness of guilt—of the accused's conduct in opposing disclosure of records of his own and of his employer corporation to the Internal Revenue agents.

Error occurred, we think, in the admission of this evidence and its articulation by the Court in the charge. For this we must reverse. In the circumstances of this case we are not called upon to adjudge the constitutional question and we find no merit in the plea of limitations. The facts need be sketched only as far as necessary to indicate the settings of our rulings.

Since 1946 appellant Foster has been engaged in the building construction business in Venezuela, having organized for the purpose Foster Construction, C.A., of Venezuelan charter. He was its president. The corporation was singularly successful. The proportion of its capital stock owned by him varied throughout the years of the events in this case, but at all times Foster was its acknowledged executive, omnipotent and unrestricted in the exercise of the corporate powers. One of its bank accounts was with the Bank of London and South America, New York Agency (herein designated as the Bank). Moneys in all of the bank accounts were under the control of Foster. Thurman A. Whiteside of Miami, Florida, until a few years prior to his death in 1960, was personal attorney for the appellant, and as well represented Foster Construction, C.A. and handled various trust accounts for Foster.

The prosecution was concentrated on 27 checks written by Foster on the Bank against the account of Foster Construction, C.A. which totalled more than $400,000 in 1952 and $200,000 in 1953. These sums were not reported on Foster's returns for these years. The United States charged they were expenditures

for his own personal use and represented a distribution to him of "earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered." Int.Rev. Code of 1939, § 116(a)(3) *post*. Foster's explanation was that his salary for 1952 and 1953 was $108,000 and $102,000 respectively, and the balance of the amounts charged by the Government evidenced repayable advances or loans, corporate investments and expenses of the corporation. The parties stipulated the salary figures. Thus the issues in the case were whether or not the moneys received in excess of the salary were for Foster's personal use, and if so, whether or not he wilfully failed to report this income.

I. The income taxable to a citizen residing in a foreign country is prescribed in Int.Rev.Code of 1939, § 116(a)(1) and (3), by a statement of what shall not be included in gross income, and exempted from taxation, as follows:

"§ 116. Exclusions from gross income

"In addition to the items specified in section 22(b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

"(a) Earned income from sources without the United States.

"(1) Bona fide resident of foreign country. In the case of an individual citizen of the United States, who establishes to the satisfaction of the Secretary that he has been a bona fide resident of a foreign country or countries for an uninterrupted period which includes an entire taxable year, amounts received from sources without the United States (except amounts paid by the United States or any agency thereof) if such amounts constitute earned income (as defined in paragraph (3)) attributable to such period; but such individual shall not be allowed as a deduction from his gross income any deductions properly allocable to or chargeable against amounts excluded from gross income under this paragraph.

\* \* \* \* \* \*

"(3) Definition of earned income. For the purposes of this subsection, 'earned income' means wages, salaries, professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a *distribution of earnings or profits rather than a reasonable allowance* as compensation for the personal services actually rendered." (Emphasis supplied.)

See also Int.Rev.Code of 1954, § 911(a)(1) and (b), 26 U.S.C.A. § 911(a)(1) and (b). On this point the District Judge charged in the exact words of this statute.

Invalidity is imputed to these provisions—vital elements of the offense charged to the defendant—on this ground: ascertainment of the taxable income is dependent upon an uncertain determinant, that is, what compensation is "a reasonable allowance". Appellant asserts that a taxpayer could not, under the statute, know whether he was guilty of not reporting income until—subsequent to the filing of his report—a jury or court resolved the question. The statute, he stresses, gives no criterion for determination of a "reasonable" salary—this vagueness thus vitiates the law as denying the accused due process. He cites Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); United States v. L. Cohen Grocery Co., 255 U.S. 81, 41 S.Ct. 298, 65 L.Ed. 516 (1921); Collins v. Kentucky, 234 U.S. 634, 34 S.Ct. 924, 58 L.Ed. 1510 (1914); International Harvester Co. v. Kentucky, 234 U.S. 216, 34 S.Ct. 853, 58 L.Ed. 1284 (1914). Approval of such a statutory formula, the United States responds, is found in Unit-

ed States v. Ragen, 314 U.S. 513, 62 S.Ct. 374, 86 L.Ed. 383 (1942).

But, with the Government, we agree that issue was not in the case. The parties stipulated the amounts, as already noted, of the salary paid Foster each year. While the stipulation did not explicitly express agreement on the reasonableness of the compensation, it was so construed by the parties. From brief and argument we understand the Government treated these amounts as reasonable in computing the taxes due by Foster, and is willing to make this concession unreservedly in a second trial. Foster does not now contend that the disputed balances represent "other amounts received as compensation for personal services" which—combined with his salary—are governed by the standard "reasonable". The dispute is between the Government's claim of "distributions of earnings and profits"—clearly a definitive standard—and the reply of Foster that they comprise corporate loans, investments or expenses. Thus "reasonableness" is not drawn into issue. As to the taxpayer the statute is clear and constitutional; the infirmity he alleges would not result in the nullification of the entire statute. See United States v. Raines, 362 U.S. 17, 22, 24, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

True, in the Court's charge there is the possible inference—apparently inadvertent—that the jury might "determine the amount of such salary and bonus * * * [and] the proper figure for the year * * *." In another trial, with the stipulation more explicit, the Court will be warranted in a peremptory statement to the jury that this compensation was no more than reasonable.

■ II. The indictment was brought in on January 10, 1961. As to the 1952 and 1953 taxes, it alleged the attempts at evasion as occurring, respectively, October 30, 1953 and September 29, 1954. Defendant's plea was that any prosecution was ruled out upon the lapse of 6 years, that is, after 1959 and 1960, well before the laying of any formal ac-

cusation. The Code of 1939, in pertinent part provides:

"§ 3748. Periods of limitation— (a) criminal prosecutions

"No person shall be prosecuted, tried, or punished, for any of the various offenses arising under the internal revenue laws of the United States unless the indictment is found or the information instituted within three years next after the commission of the offense, * * * except that the period of limitation shall be six years—

"(2) for the offense of willfully attempting in any manner to evade or defeat any tax or the payment thereof, * * *

* * * * * *

"The time during which the person committing any of the offenses above mentioned *is absent from the district wherein the same is committed* shall not be taken as any part of the time limited by law for the commencement of such proceedings." (Emphasis supplied.)

This was the Act as written on the date of the violation alleged in respect to the 1952 taxes for which the return was filed October 30, 1953. On August 16, 1954— just before the return for 1953 was filed —this statute was replaced by § 6531 Int.Rev.Code of 1954, and these words added:

"The time during which the person committing any of the various offenses arising under the internal revenue laws *is outside the United States or is a fugitive from justice within the meaning of section 3290 of Title 18 of the United States Code,* shall not be taken as any part of the time limited by law for the commencement of such proceedings. (The preceding sentence shall also be deemed an amendment to section 3748(a) of the Internal Revenue Code of 1939, and shall apply in lieu of the sentence in section 3748(a) which relates to the time during which a person committing an of-

fense is absent from the district wherein the same is committed, except that such amendment shall apply only if the period of limitations under section 3748 would, without the application of such amendment, expire more than 3 years after the date of enactment of this title, and except that such period shall not, with the application of this amendment, expire prior to the date which is 3 years after the date of enactment of this title.)" (Emphasis supplied.)

The defendant asserts that this last tolling provision applies only to a taxpayer who goes without the realm to avoid prosecution. Bona fide residence in a foreign country was not intended by the Congress to interrupt the statute's run, he urges, since such a denial to residents abroad of the benefit of a statute of limitations would only be done in "unambiguous and explicit terms". He argues from the analogy of the interpretation of Int.Rev.Code of 1939, § 3748, supra, in United States v. Beard, 118 F.Supp. 297, 302 (D.Md.1954), the Court construing "absent from the district" as referring only to an absence to escape criminal process.

The District Judge held, and rightly, that the 1954 provision was applicable to the 1952 tax return—filed October 30, 1953—as well as to the 1953 tax violation alleged as committed in September 1954. Accordingly, overruling the contra assertion of the appellant, the Court applied the tolling phrase of the 1954 Code—"outside the United States"—to both charges and concluded that the limitation was intermitted while the appellant was beyond the marches of the United States. This determination is uncompromisingly dictated by the terms of the later enactment.

There is no proof the Congress intended to provide a suspension of the limitation only as to those persons who had absconded or for some ulterior motive had gone beyond the jurisdiction. The saving clause puts them within the toll, and—as clearly—simultaneously withdraws the limitation from the bona fide nonresident as well. That the effect is to remove from the latter all protection of the statute in tax prosecutions does not refute our construction here, for the Congress had the power to do so. The plea of the statute of limitations was correctly overruled.

III. Evidence of events commencing in 1957—three and four years after the offenses charged to Foster—was offered to prove either specific wilfulness or general consciousness of guilt. Over defendant's objection incidents were proved which the Government argued "impeded" it in investigating the offenses.

At the outset, we think none of them inadmissible simply because they occurred several years subsequent to the date of the alleged crimes. United States v. Taylor, 305 F.2d 183 (4 Cir. 1962); Morrison v. United States, 270 F.2d 1, 4–5 (4 Cir. 1959). If the behavior is to prove consciousness of guilt, it obviously must have occurred subsequent to the offense. In assessing their admissibility on still other grounds we examine the circumstances of each instance. Throughout it must be remembered, as the appellant stresses, that all of these events took place after the inception of the criminal investigation. Foster's tax problems had been placed in the hands of a Special Agent of the Intelligence Division. Assignment of a case to a Special Agent is generally known to mean that investigation is afoot for a criminal prosecution.

In July, 1957 pursuant to Int.Rev.Code of 1954, § 7602, the Special Agent summoned the Bank to produce its books and records in connection with the account of Foster Construction, C.A. and Grant Foster. The Bank immediately notified Foster of the summons. Foster both telephoned and cabled the Bank, questioning the authority of Internal Revenue to investigate, and insisting that the investigation be delayed until his arrival with a legal representative. A threat to hold the Bank responsible was added. The Bank followed his directions.

On August 27, 1957 a conference was held by Foster and his accountant with the Revenue Agents. He was told of his privilege against self-incrimination. Repeated was the request for the corporate records in the Bank. Foster advised them he desired to consult his attorneys and would give a reply later. The agents subsequently learned through the accountant of the advice of Foster's lawyers that in view of Intelligence Division interest in the case, no records would be made available.

On August 29 another summons was received by the Bank for the same records as before. A letter of general objection was sent the Bank by Foster. At his instance the Bank refused production, first obtaining from him an agreement indemnifying it against penalties. On September 18, 1957 a court order was received by the Bank. Int.Rev.Code of 1954, § 7604. Still the Bank on the insistence of Foster and his attorneys did not comply.

In the litigation that followed Foster and Foster Construction, C.A. intervened; on January 22, 1958 final judgment in the dispute went for the Government, In re Foster, 159 F.Supp. 444 (S.D.N.Y.1958), and on appeal was affirmed, 265 F.2d 183 (2 Cir. 1959). Foster's attorney then advised the Bank of his petition for review by the Supreme Court, insisting that meanwhile the Bank not permit Internal Revenue to see the records. Review was denied later in 1959, 360 U.S. 912, 79 S.Ct. 1297, 3 L.Ed. 2d 1261, and the records were released.

■■ Foster asserts the admission of his communications with the Bank and testimony as to the litigation in the Second Circuit were prejudicial. It must be noted that the resistance to production of the records was not pitched on the safeguards against self-incrimination of the Fifth Amendment. Indeed, corporate records are not so protected. United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944). Even the custodian of such records may not withhold them on the basis that their production might incriminate him or a third party, though the custodian is a corporate officer. Essgee Co. of China v. United States, 262 U.S. 151, 43 S.Ct. 514, 67 L.Ed. 917 (1923); Wilson v. United States, 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911). If some of Foster's personal records were involved, they too would not be immune from inspection when not in his or his attorney's possession but held by the Bank in regular course of business. The sole question here then is whether proof of the resistance was competent to establish Foster's intent or consciousness of guilt.

■ In our opinion this evidence was incompetent and should not have been received. Under Int.Rev.Code of 1954 §§ 7602, 7604, supra, a hearing to test the legality of the summoned production is afforded. The record discloses no evidence from which the jury could draw a conclusion that Foster's participation in the test was in bad faith. That it incidentally delayed the investigation would not alone warrant such an inference. Unsuccessful recourse to remedies provided by law should not carry a connotation different from that of successful resort. This is not to say that admissions in testimony or pleadings attributable to the defendant in that proceeding may not be introduced as substantive proof of intent to evade the tax. We merely hold that lawful resistance to investigation does not generate an inference of guilt. The District Court in New York made no finding that Foster's contentions were altogether frivolous or dilatory. One of the grounds of defense was termed by the court "in the abstract, sound." We do not think a jury able or entitled to appraise the nature and effect of a judicial proceeding.

On January 7, 1958 Foster cabled Thurman Whiteside, his former attorney as follows (as received in evidence):

"I respectfully request you treat all phases of my business with you company business and trust funds as confidential and will expect you to honor attorney client relations and withhold all information."

Unquestionably the accused was entitled to have Whiteside honor the client-attorney privilege. His invocation of the privilege could not be the subject of debate before the jury. It is an ancient and venerated right. If the privilege itself was not open to comment, obviously the injunction to the attorney to invoke it is not open to condemning inference. Halsband v. Columbian Nat. Life Ins. Co., 67 F.2d 863 (2 Cir. 1933); United States v. Cotter, 60 F.2d 689 (2 Cir. 1932); Pennsylvania R. R. v. Durkee, 147 F. 99 (2 Cir. 1906), citing Wentworth v. Lloyd, 10 H.L.Cas. 589 (1864) (Lord Chelmsford); A. B. Dick Co. v. Marr, 95 F.Supp. 83 (S.D. N.Y.1950).

This conclusion is not altered by the fact that Whiteside had ceased to be Foster's attorney. The information and data in his possession had been obtained in that relationship with Foster. Of course, the admonition would have to be construed as embracing only materials which were within the privilege. The evidence showed Foster's personal affairs to be inextricably involved with nonprivileged matters. Thus the warning itself was still not admissible though on further interrogation some of the desired items be found not protected.

No objection was interposed when the cable to Whiteside was proffered. We need not say whether the omission was excusable or should in any event be noticed—Rule 52(b) F.R.Crim.P., 18 U.S.C.A.—for as the case will have to be retried for other reasons the objection will doubtless then be made.

Finally, the charge of the Court is said by the appellant to have compounded the error in respect to the admission of proof indicating evil intent and acknowledgment of guilt. The point made is that the submission allowed the jury to consider—as inferential of wrongdoing—any move of the appellant to "impede" Internal Revenue's investigation of the records of Foster Construction, C.A. and that this would include appellant's lawful acts of resistance. On this subject the Court said:

> "There is evidence in this case that attempts were made *to impede* the Bureau of Internal Revenue's investigations of the business affairs and records of certain corporations in which the Defendant had an interest. There is also evidence that the Defendant wished to cooperate with the Internal Revenue agents. If you find that an attempt *to impede* the investigation was made by the Defendant, you may consider the fact as bearing on the intention of the Defendant. You should not attribute to the Defendant acts of his lawyers which he is not shown to have authorized." (Emphasis supplied)

What the appellant did, in the instances already enumerated, undoubtedly impeded the investigation. But as this impeding was entirely permissible, the jury should not be allowed to draw from it an inference of misdoing on the part of the accused. In the circumstances we think the charge in that regard was erroneous.

Foster's refusal was in a statutory proceeding where the statute gave a clear right to a hearing. Outside this proceeding all he did was to delay decision to produce the bank records until he had conferred with his attorneys, certainly not an unreasonable insistence. Because of the specificity of the questions here presented, we have no occasion to declare generally the obligations of a taxpayer in responding to the inquiries of Internal Revenue. Thus we do not entertain the appellant's request to reconsider our decision in Beard v. United States, 222 F.2d 84 (4 Cir. 1955). See 10 Mertens, Law of Income Taxation, § 55A.21 (1958 and Supp.).

The judgment of conviction will be reversed and the case remanded for a new trial not inconsistent with this opinion.

Reversed and remanded.