**Elijah Ephraim JHIRAD, Petitioner,**

v.

**Thomas E. FERRANDINA, United States Marshal for the Southern District of New York, Respondent.**

No. 73 Civ. 1630.

United States District Court,
S. D. New York.

June 8, 1973.

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for petitioner by Edward L. Sadowsky, and Stacy L. Wallach, New York City, of counsel.

Louis Steinberg, and Edwin A. Steinberg, New York City, for Government of India.

William R. Bronner, Asst. U. S. Atty., for respondent Ferrandina.

## OPINION AND ORDER

DUFFY, District Judge.

Elijah Ephraim Jhirad petitions for a writ of habeas corpus. This is the second writ sought by petitioner in this very protracted and complicated extradition matter. In an earlier opinion Jhirad v. Ferrandina, 355 F.Supp. 1155 (S. D.N.Y.1973), I denied Jhirad's first petition, which was brought before a hearing could be held by the magistrate. The facts of this case are set out in great length in the prior opinion, and I shall only briefly reiterate them here.

The Government of India (the real respondent to this action) has sought the extradition of petitioner Jhirad pursuant to 18 U.S.C. §§ 3182 and 3184. India contends that Jhirad, while Judge Advocate General of the Indian Navy, embezzled a substantial sum of money from a prize fund set up to recompense naval veterans, which he administered.

The normal scenario of events in an extradition case begins with the issuance of a warrant for the detention of the alleged fugitive. Thereafter, the magistrate holds a hearing to determine whether the party before him is in fact

the party sought and, if so, whether or not the requesting government can demonstrate probable cause that the fugitive committed an extraditable offense. The decision of the magistrate is not directly appealable; however, it can be attacked by means of a writ of habeas corpus. Sayne v. Shipley, 418 F.2d 679 (5th Cir. 1969), cert. denied, 398 U.S. 903, 90 S. Ct. 1688, 26 L.Ed.2d 61 (1970). Unfortunately, the procedure in this case was somewhat different. Petitioner Jhirad brought his first petition before the magistrate had held his hearing. Reluctantly, this Court felt constrained to decide the merits of petitioner's claims before the hearing because of the prolonged pendency of the petition. Of necessity, this course of events further limited the narrow scope of review of an extradition matter normally open to a court on a petition for habeas corpus,[1] since no issues regarding the magistrate's decision could be presented in the first petition.

While denying the first petition, this Court held that the Treaty of 1931, 47 Stat. 2122, between Great Britain and the United States, acceded to on behalf of India in 1942, was a valid existing treaty of extradition between India and the United States which supported an exercise of jurisdiction by the magistrate. In addition, it was held that the offense charged against Jhirad came within the offenses enumerated as extraditable in the Treaty. Lastly, this Court held that under the Treaty of 1931, extradition otherwise permissible could not take place if the statute of limitations of India or the United States would bar prosecution of the charged of-fense. However, the Court rejected petitioner's assertion that either the applicable United States Statute of Limitations, 18 U.S.C. § 3282, or the applicable Indian principle of laches would prevent the prosecution of Jhirad.

Jhirad in his present petition raises three major issues which he asserts foreclose extradition. I now turn to a discussion of those issues.

Jhirad strenuously requests that this Court reconsider its original determination that some of the charged offenses allegedly committed by Jhirad are *not* time barred by 18 U.S.C. § 3282, the relevant United States Statute of Limitations. Under 18 U.S.C. § 3282 there is a five year period of limitation from the time of the alleged offense within which the accused must be indicted. It is uncontroverted that the Government of India did not institute action against Jhirad until nearly seven years after the last alleged offense. Unless, therefore, the period were tolled, these charges would not support extradition. However, this Court held that under 18 U.S.C. § 3290, the time period was tolled on July 26, 1966, when Jhirad left India. 18 U.S.C. § 3290, tolls the running of the Statute of Limitations when the alleged offender is a "fugitive from justice". The focus of petitioner's attack is this Court's determination that Jhirad's mere absence from India tolled the statute regardless of his motive or intention.

As was stated in this Court's first decision, the circuits are divided as to the meaning of "fugitive from justice" in Section 3290. One line of cases holds that to constitute a fugitive from justice, it must be shown that one was ab-

---

1. The scope of inquiry open to a district court when deciding a writ of habeas corpus in an extradition case is very narrow, being limited to the following questions:
   1) Whether the magistrate has jurisdiction;
   2) Whether the offense alleged is a treaty offense, and
   3) Whether there was substantial evidence produced at the hearing to support the magistrate's determination that there were reasonable grounds to be-

lieve the accused guilty of the alleged offense.
Wacker v. Bisson, 348 F.2d 602 (5th Cir. 1965;
Sayne v. Shipley, 418 F.2d 679 (5th Cir. 1909), cert. denied, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970);
United States ex rel. Petrushansky v. Marasco, 215 F.Supp. 953 (S.D.N.Y. 1963), aff'd 325 F.2d 562 (2nd Cir. 1963) cert. denied, 376 U.S. 952, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964).

sent from the jurisdiction where the crime was committed and, in addition, that the fugitive intended to avoid prosecution or evade the jurisdiction of the local courts. Donnell v. United States, 229 F.2d 560 (5th Cir. 1956); Brouse v. United States, 68 F.2d 294 (1st Cir. 1933); Greene v. United States, 154 F. 401 (5th Cir. 1907), cert. denied, 207 U. S. 596, 28 S.Ct. 261, 52 L.Ed. 357 (1907); Porter v. United States, 91 F. 494 (5th Cir. 1898). The other line of cases holds that the mere absence of the defendant from the jurisdiction is sufficient to constitute a fleeing from justice and thus to toll the Statute of Limitations. King v. United States, 144 F.2d 729 (8th Cir. 1944), cert. denied, 324 U. S. 854, 65 S.Ct. 711, 89 L.Ed. 1413 (1945); McGowen v. United States, 70 App.D.C. 268, 105 F.2d 791 (1939), cert. denied, 308 U.S. 552, 60 S.Ct. 98, 84 L. Ed. 464 (1939); Green v. United States, 88 U.S.App.D.C. 249, 188 F.2d 48 (1951), cert. denied, 341 U.S. 955, 71 S. Ct. 1008, 95 L.Ed. 1376 (1951); In re Bruce, 132 F. 390 (D.Md.1904), aff'd sub nom. Bruce v. Bryan, 136 F. 1022 (4th Cir. 1905). This Court adheres to its earlier decision following the latter line of cases.

It is important to remember the context within which this decision must be made. This is an extradition case, involving activity which has taken place half-way around the world. The extradition procedures afforded by statute seek to preserve an element of judicial surveillance over a procedure which is basically an action of international comity. Of necessity, a fugitive is not given a full trial on the issue of his guilt. In fact, the procedures fall strikingly short of a full trial. It would be most difficult for a court in one jurisdiction to seek to determine factual issues arising in another distant jurisdiction. Undoubtedly, this constitutes the rationale for requiring that the demanding country to support extradition merely prove reasonable grounds to believe the fugitive guilty. These same factors persuade this Court that to apply a test requiring a showing of intent, at best a difficult issue of fact, for an act occurring in a distant land, would be most inappropriate.

In seeking to have this Court change its earlier position, petitioner has attempted to demonstrate that Congress desired that an intent to avoid prosecution be proved in order to satisfy the fleeing from justice requirement of Section 3290. The petitioner's argument, quite novel and ingenious, is based on an analysis of the terms "fugitive from justice" and "absent from the district" as used in the Internal Revenue Codes of 1939 and 1954, each of which has its own statute of limitations. The Statute of Limitations, 26 U.S.C. § 3748, included within the 1939 Code was tolled when a person committing the alleged offense was *absent* from the district. When the 1954 Code was enacted, Congress chose to toll its Statute of Limitations, 26 U. S.C. § 6531, when the person committing the alleged offense is outside the United States or is a fugitive from justice within the meaning of 18 U.S.C. § 3290. Also, at this time, Congress amended the Code of 1939, § 3748, to delete [2] the mere absence standard, substituting the fleeing from justice standard. It is argued therefore that Congress clearly distinguished between mere absence and fleeing from justice, and that Congress intended fleeing from justice in the tolling provision, 18 U.S.C. § 3290, to require a showing of intent to be operative.[3] Interesting as this argument is, it is of very little relevancy what Congress

---

2. The "absent from the district" standard was in fact not totally deleted but after 1954 was to apply only in prosecutions of alleged violations of the 1939 Code occurring prior to 1954.

3. At least one court has suggested that the difference in the language of the tolling provision in the 1939 and 1954 Internal Revenue Codes resulted from an enlargement of the scope of federal criminal jurisdiction from districtwide to nationwide. United States v. Foster, 197 F. Supp. 387 (D.Md.1961).

meant when it enacted the Internal Revenue Codes, when the issue before the Court is the meaning of a phrase in a different statute, regardless of how similar are the statutory sections.

The general statute of limitations containing the phrase "fugitive from justice" has existed for many years prior to the enactment of the 1954 Code. Congress's intent in 1954 regarding a phrase in one statute is not of controlling import in determining what the same phrase was intended to mean in a different statute enacted by a Congress more than 60 years before. In addition, a majority of courts faced with divining the meaning of "fugitive from justice" in 18 U.S.C. § 3290, and its predecessor statute 18 U.S.C. § 583 held that Congress had not required a showing of intent.

Petitioner's argument fails for another reason. Even though the phrase "fugitive from justice" as contained in 26 U.S.C. § 6531 may have been interpreted as not being an operative tolling provision unless an intent to flee was proven, it is important to note that the phrase applies only to intra United States flights. Under 26 U.S.C. § 6531, the time for commencement of a tax action is tolled

"during [the period when] the person committing one of the various offenses . . . is outside the United States or is a fugitive from justice."

In those cases where a defendant in a tax suit has been outside the country during the period following the alleged offense, most courts have held that the time period within which to bring an action is tolled by the mere absence from the country of the accused. United

States v. Foster, 197 F.Supp. 387 (D. Md.1961), rev'd on other grounds, 309 F.2d 8 (4th Cir. 1962); United States v. Myerson, 368 F.2d 393 (2nd Cir. 1966), cert. denied, 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967); United States v. Jurzykowski, 159 F.Supp. 7 (N.D.N.Y. 1957).

Thus, under the tax laws there are two separate standards, one for intra-country absences and another for absences from the country. It should be noted that § 3290 applies to both intra- and extra-U. S. flights from justice. It would be highly inconsistent to attempt, as petitioner has sought, to infuse the words "fleeing from justice" in § 3290, where they have a broader application, with the meaning that the words have acquired as narrowly used in the tax code, 26 U.S.C. § 6531. This is particularly true in light of the fact that in the present case the term "fleeing from justice" must be interpreted in circumstances where the alleged offender has not merely moved from one jurisdiction within a country to another but has, in fact, left his homeland. It is for these reasons that this Court adheres to its earlier opinion that as to the last three charged offenses included in the third charge sheet presented by India to the Magistrate, the applicable statute of limitations has been tolled by § 3290.[4]

■ The second argument made by Jhirad in his petition is that extradition is being sought by India to punish petitioner for political activity and thus extradition is barred by Article Six of the Treaty of 1931, which is as follows:

"A fugitive criminal shall not be surrendered if the crime or offense in respect of which his surrender is de-

---

4. Dealing with the other charge on the last sheet, the Magistrate held in his decision, relying on § 222 of the Indian Penal Code, that the Statute of Limitations had not run as to the last four charged offenses since they constituted one inclusive offense whose last act occurred less than five years before Jhirad left India. This analysis is not without some merit. However, this Court, relying on the testi-

mony of Mr. Mehta, an expert on Indian law, called by the Government of India at the hearing, feels contrained to hold that the four offenses do not constitute one offense nor have they been treated as one offense within the meaning of the statute, but must be dealt with individually. Thus, only the last three charged offenses are not time barred.

manded is one of a political character or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for a crime or offense of a political character." Art. 6, Treaty of 1931, 47 Stat. 2122.

■ Article Six appears to set forth two separate tests by which to determine whether the person sought for extradition is being properly sought by the demanding country. There was no attempt by petitioner at the hearing before Magistrate Goettel to demonstrate that the offenses charged were political in character, nor has this claim been made in this petition. The Magistrate, though uncertain as to whether, in fact, this article mandated that he must weigh evidence on the question of whether India's action against Jhirad was politically motivated, nevertheless heard evidence on the question and held that petitioner had failed to prove such political animus. A fair reading of the Treaty compels the conclusion that this Treaty creates a prohibition against politically motivated extradition, and therefore the Magistrate properly allowed evidence to be presented on this issue.

In Ornelas v. Ruiz, 161 U.S. 502, 16 S.Ct. 689, 40 L.Ed. 787 (1896), the Supreme Court was asked to review a District Court's determination that a magistrate did not have jurisdiction to extradite an accused because the acts allegedly done were political and as such were immunized by the relevant treaty of extradition. In setting down the standard for review of a magistrate's determination, Mr. Chief Justice Fuller, speaking for the Court, indicated that a writ of habeas corpus was not a writ of error and that the District Court could only inquire whether "there was legal evidence on which the commissioner might properly conclude the accused had committed offenses within the treaty as charged."

The language of Article Six makes it clear that the burden of proof rests on the petitioner to show that India's demand is being made to punish him for political activities. I find that the Magistrate was correct in concluding that petitioner had failed to prove his contention. The only evidence offered by petitioner in support of his argument was that Jhirad was an outspoken advocate of the State of Israel, in a country firmly committed to the Arab bloc; that certain Government officials had warned him about his activities; and that he was supposedly under surveillance by some Government agencies. However, this alone is not enough to demonstrate that *this* request for extradition is motivated by India's animosity for Jhirad's pro-Israel sentiments. Petitioner has shown no evidence regarding the circumstances of this investigation of Jhirad or his indictment in India, which shows political motivations. Indeed, as the Magistrate pointed out in his opinion, negating the inference of strong animosity toward Jhirad is the fact that at the very time he was allegedly chastized and under surveillance for his pro-Israel feelings, he held the highest civilian office in the Indian Navy; he was allowed to attend several World Jewish Conferences (in fact that was his destination on his final departure from India); and he was bestowed with the honor of designation as Senior Advocate by the Indian Bar Association. Petitioner has failed to prove that political motivation lurks behind this demand for extradition. Thus, it is clear that Article Six does not prohibit the extradition of Jhirad for his alleged offenses.

Lastly, I turn to petitioner's contention regarding the evidence produced at the hearing before the Magistrate. Under 18 U.S.C. § 3184, a magistrate is empowered to conduct a hearing to determine, among other things, whether there is evidence sufficient to sustain the charge under the provisions of the appropriate treaty. Article Nine of the Treaty of 1931 states that

". . . extradition shall take place only if the evidence be found sufficient, according to the laws of the

High Contracting Party applied to, . . . to justify the committal of the prisoner for trial, in case the crime or offense had been committed in the territory of such High Contracting Party . . ."

▮ Mr. Justice Brandeis, in Collins v. Loisel, 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956 (1920), while interpreting an article in an earlier treaty of extradition with Great Britain,[5] different in form but similar in substance to Article Nine, held that the treaty required that the magistrate find evidence sufficient "to block out those elements essential to a conviction." The test to be applied by the magistrate has been variously stated, but all courts in substance make clear that the magistrate does not inquire into the guilt or innocence of the accused, but looks only to see if there is evidence sufficient to show a reasonable ground to believe the accused guilty. Wacker v. Bisson, 370 F.2d 552 (5th Cir. 1967), cert. denied, 387 U.S. 936, 87 S. Ct. 2063, 18 L.Ed.2d 999 (1967). Indeed, it has been said the foreign country need only show probable cause that the fugitive is guilty. Factor v. Laubenheimer, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933); Charlton v. Kelly, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913).

▮ Before determining whether there was reasonable cause to believe the fugitive is guilty, it is first necessary to determine whether there is reasonable cause to believe a crime was committed. In determining whether a crime was committed, the magistrate apparently assumed that what must be proved were the elements of the crime of embezzle-

ment as defined by the law of New York State. Though the language of Article Nine could be read to indicate that Federal law should be applied, it seems clear that New York law as to embezzlement ought to be the source for these necessary elements.[6] The magistrate found that there was probable cause that a crime had been committed and that there were reasonable grounds to believe that the petitioner was guilty of that crime.

▮ There is only a limited review of the magistrate's finding of probable cause open to this Court. In a petition for a writ of habeas corpus, Mr. Justice Holmes, speaking for the Supreme Court in Fernandez v. Phillips, 268 U.S. 311, 45 S.Ct. 541, 69 L.Ed. 970 (1925), described the limitations on review in the following way:

". . . habeas corpus is available only to inquire . . . whether there was *any evidence,* warranting the finding that there was reasonable ground to believe the accused guilty." [emphasis added] 268 U.S. at 312, 45 S.Ct. at 542.

See also, McNamara v. Henkel, 226 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330 (1913); Jiminez v. Aristeguieta, 311 F.2d 547 (5th Cir. 1962), cert. denied, Jimenez v. Hixon, 373 U.S. 914, 83 S.Ct. 1302, 10 L.Ed.2d 415 (1963). The evidence is thoroughly reviewed by Magistrate Goettel in his opinion, and the analysis need not be repeated. I hold that there was evidence as to all the elements material in showing the crime of embezzlement and that there is reasonable ground to believe that the petitioner is guilty of that crime.

5. The Treaty of 1931, 66 Stat. 2122, originally was made between the United States and Great Britain, and it included a provision which allowed Great Britain to accede to the Treaty on behalf of certain designated territories then under British control. The Treaty was acceded to on behalf of India in 1942, and was found to support jurisdiction here in Jhirad v. Ferrandina, 355 F.Supp. 1155 (S.D.N.Y.1973).

6. The Second Circuit in Shapiro v. Ferrandina, 478 F.2d 894 (2nd Cir. 1973), held that a clause in another extradition treaty similar in content to Article Nine referred to state law to define the elements of the charged crime for the purpose of seeing if a prima facie case was made out. See also Wright v. Henkel, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948 (1903); see also Pettit v. Walshe, 194 U.S. 205, 24 S.Ct. 657, 48 L.Ed. 938 (1904).

The crime of embezzlement under New York law, now included as a form of larceny in § 155.05 Penal Law (McKinney's Consol.Laws, c. 40, 1965) is committed when a person who, having money or property in his possession as attorney, fiduciary, etc., appropriates such money to his own use or the use of other than the lawful owners. See People v. Gibson, 218 N.Y. 70, 112 N.E. 730 (1966). Both sides agree that petitioner was the administrator of the Naval Prize fund from the moment the fund was set up in late 1958 until it was closed in 1962. And the petitioner does not dispute the evidence introduced by India which shows that checks written on the Prize Fund were cashed by Jhirad and deposited in his own account, sometimes in toto and at other times in smaller amounts.

■ ■ Jhirad admits that all of the records of the Prize Fund were destroyed without an audit. But he argues that there is no evidence that any rightful claimant to the fund had been deprived. The Magistrate rejected evidence presented by India showing the names of allegedly unpaid claimants to the Fund. Such a determination is within the province of the Magistrate and not subject to review on habeas corpus. Further, this Court agrees with the Magistrate's conclusion that India did not have to show that someone entitled to a share was not paid. The evidence presented to the Magistrate demonstrated that Jhirad appropriated money to his own use over which he maintained only ficuciary control. It is not necessary that an individual unpaid claimant be brought forth, since there was evidence presented which demonstrates that the money was not Jhirad's. If the money did not belong to a claimant, then it must revert back to the authorizing unit, certainly not to the fiduciary who administered it. For probable cause to be shown, it is necessary only that there be evidence that the money was not Jhirad's, rather than as petitioner has suggested, that there be evidence that the money was the property of a particular person.

■ Petitioner cites People v. Von Cseh, 9 A.D.2d 660, 191 N.Y.S.2d 699, (1st Dept. N.Y.1959), for the proposition that the mere deposit of money over which one is trustee into one's own bank account is not evidence of the intent necessary for embezzlement. Upon careful examination, the Von Cseh case is seen as merely standing for the proposition that where the fiduciary is *expressly* given *absolute* discretion as to the deposit of money, more must be shown to indicate a felonious intent. In this case, there was no evidence that Jhirad was given the discretion to deposit money as he saw fit. Thus, it seems to me that the deposit of money in the bank is sufficient evidence of such an intent to satisfy probable cause.

■ The Magistrate was hesitant about permitting the petitioner to introduce evidence which allegedly showed that some claimants were paid with money orders purchased by cash which allegedly was advanced by Jhirad. The law is somewhat unclear as to what evidence a fugitive can advance at the hearing. Charlton v. Kelly, *supra,* 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). The Second Circuit in United States ex rel. Petrushansky v. Marasco, 325 F.2d 562 (2nd Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 969, 11 L. Ed.2d 971 (1964), stated the rule in the following way:

> "Although at a hearing of this type a fugitive has a right to introduce evidence, the right is limited to testimony which explains rather than contradicts the demanding country's proof, and its precise scope is largely in the Commissioner's discretion."

325 F.2d at 567.

The line between an explanation and a contradiction is a narrow and sometimes invisible one. It appears proper that the Magistrate allowed this evidence to be presented. The evidence as regards Jhirad's justification does serve to ex-

plain the deposit of moneys in petitioner's account. Even with this explanatory evidence, however, there is sufficient evidence to show probable cause. As the Magistrate properly pointed out, whatever evidence Jhirad presented to show that the transfer of money from the fund to his account was merely a repayment for funds advanced because of the inconvenience of having to go to the bank to cash Fund checks and then to pay for the postal orders, was negated by the fact that petitioner on many occasions would for several days in a row withdraw large amounts from the Fund and deposit them in the bank, and then make further withdrawals from the bank. It strikes me that these frequent trips to the bank often in the same day represent the height of inconvenience.

The Magistrate may have erred in disregarding the evidence introduced by petitioner that he made a substantial profit in one commodity brokerage account which he kept. However, this exclusion is not of great importance. As the Supreme Court indicated in Charlton v. Kelly, *supra*, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913), the erroneous exclusion of other evidence will not render the detention illegal, so long as there remains enough competent evidence to sustain the burden of establishing probable cause. Even accepting petitioner's evidence, the net result of his market activities is a profit which compared to his alleged advances seems minute, and thus not of persuasive force in serving as a source of cash for the alleged advances.

Finally, petitioner seeks to object to the Magistrate's refusal to credit petitioner's evidence that it was not he who ordered the destruction of the records of the Prize Fund. Under the test of *Petrushansky*, this evidence would seem to be contradictory, not explanatory, and thus I find it properly excluded. It is important to note that the evidence does not have to show guilt, but need only show probable cause or a reasonable belief that the petitioner was guilty of the crime for which extradition is sought. I conclude that there was evidence to support the Magistrate's finding.

For the above reasons, the petition for the writ of habeas corpus is denied.

So ordered.