**Elijah Ephraim JHIRAD, Petitioner,**

v.

**Thomas E. FERRANDINA, United States Marshal, Southern District of New York, Respondent.**

**No. 73 Civ. 1630.**

United States District Court,
S. D. New York.

July 17, 1975.

**1216**

Tenzer, Greenblatt, Fallon & Kaplan, New York City, for petitioner; by Edward L. Sadowsky, New York City, of counsel.

Louis Steinberg, Edwin A. Steinberg, New York City, for the Government of India.

Paul J. Curran, U. S. Atty., for respondent; by William R. Bronner, Asst. U. S. Atty., of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This is the third petition for a writ of habeas corpus brought in this international extradition proceeding. See 355 F.Supp. 1155 (S.D.N.Y.1973) and 362 F.Supp. 1057 (S.D.N.Y.1973), rev'd & remanded, 486 F.2d 442 (2d Cir. 1973). The remand from the Court of Appeals was occasioned by a different definition of the term "fleeing from justice" than that applied by me, there being a conflict among the circuits on this point. See *Donnell v. United States*, 229 F.2d 560 (5th Cir. 1956); *Brouse v. United States*, 68 F.2d 294 (1st Cir. 1933) but see *King v. United States*, 144 F.2d 729 (8th Cir.), *cert. denied*, 324 U.S. 854, 65 S.Ct. 711, 89 L.Ed 1413 (1944); *McGowen v. United States*, 70 App.D.C. 268, 105 F.2d 791, *cert. denied*, 308 U.S. 552, 60 S.Ct. 98, 84 L.Ed 464 (1939).

The petitioner in this habeas corpus proceeding, Elijah Ephraim Jhirad, was Judge Advocate General of the Indian Navy. As such, between 1959 and 1961, he was in charge of a prize fund established for the benefit of certain Indian sailors who had served during World War II.

■ It is alleged by the Government of India that a substantial portion of the prize fund was embezzled by Jhirad. It is clear that the petitioner left India on July 26, 1966, and that the applicable five year statute of limitations, unless tolled, would have expired on September 27, 1966. The only question presented on the remand by the Court of Appeals is whether Jhirad left India with the "intent to flee from justice," which would toll the statute of limitations.

Magistrate Goettel held further hearings on the remand and filed "Additional Findings on Extradition Proceedings" in which he set forth (as best he could) the complete chronology of the events whereby Jhirad formed an "intent to flee" the jurisdiction of India.

February 19, 1966: The Central Bureau of Investigation in India was requested to commence an investigation concerning allegations that there had been mismanagement, and possibly embezzlement, from the Naval Prize Fund.

May, 1966: Jhirad informed a naval officer who had been directed to conduct an inquiry that the records of the Prize Fund had been destroyed (Jhirad had informed his superiors of this fact in the later part of 1965).[1]

May 26, 1966: A subpoena duces tecum was issued to the Central Bank of India where the Naval Prize Fund had been maintained and where Jhirad had a personal account.[2]

June, 1966: An employee of the Central Bank of India advised Jhirad that the subpoena had been received.

June 17, 1966: The Secretary General of the World Jewish Congress invited

---

1. Jhirad denied that these events occurred.

2. The subpoena was issued under a criminal file number of an earlier and apparently dormant investigation concerning Jhirad's misuse of his business telephone and his having made extensive speculative investments.

Jhirad to attend the Fifth Plenary Assembly in Brussels, July 31 to August 9, 1966. Subsequently, after being designated by the Central Jewish Board of Bombay as one of the representatives of Indian Jewry, the Congress agreed to defray his costs. (A week later his wife was invited to an auxiliary conference of Women's Zionist Organization held at the same time and place.)

June 28 to July 16, 1966: Jhirad and his wife sold various of his law books and other items of his personal possessions.

July 2, 1966: The case was officially registered with the Central Bureau of Investigation.

July 3, 1966: Jhirad obtained his passport.

July 5, 1966: The police began their investigation.

July 16 to July 22, 1966: Jhirad obtained visas to visit Belgium, France and Switzerland.

July 19, 1966: Jhirad obtained permission from his naval superiors to go to Brussels to attend the World Jewish Congress meeting.

July 26, 1966: Jhirad left India with his wife and children to attend the World Jewish Congress meeting. (He stopped en route for a few days in Switzerland.)

July 30—August 10, 1966: Jhirad and his wife and family were in Brussels attending the World Jewish Conference.

August 10, 1966: Jhirad and his family traveled to Geneva and resided there openly until 1967, when they emigrated to Israel.

Jhirad argues that he left India solely for the purpose of attending the World Jewish Conference and that he did not form the intention not to return to India until November or December of 1966. These dates are extremely important since the applicable statute of limitations would have time barred the extradition on September 25 or 27, 1966. Magistrate Goettel found, however, that while the "intent to flee" might not have existed at the time Jhirad left India on July 26, 1966, it certainly was formed by the early part or, at the latest by the midpoint, of September 1966, and thus that extradition was not time barred.

I have reviewed the entire record in this case: the exhibits, the transcripts, the affidavits and all other pertinent documents. I must conclude that the Magistrate's finding that Jhirad should be extradited was correct and that this petition for habeas corpus must be denied.

Had I been the trier of the facts I would perhaps have determined that the "intent to flee" to avoid prosecution was formed even prior to the time Jhirad left India. There is substantial evidence in the record to indicate that Jhirad knew that he was under investigation prior to that date.

I have spent an enormous amount of time in reviewing and re-reviewing the extensive record in this case. It shows that Jhirad in the latter part of 1965, admitted to his superiors in the Indian Navy that all the records of the prize fund had been destroyed; that the matter was referred by the Navy to the Special Police Establishment pursuant to a confidential memorandum to the Ministry of Defense; that in February 1966, the Central Bureau of Investigation commenced an inquiry to determine the whereabouts of the records; that on May 26, 1966, a subpoena duces tecum concerning these records was issued to and received by the Central Bank of India where the Prize Fund account was kept; that in June 1966, an employee of that bank informed Jhirad of the investigation and of the fact that the subpoena had been received.

At the time of these latter incidents, the petitioner was engaged in his own private law practice which apparently was somewhat successful. Between June 28, 1966 and July 16, 1966, petitioner and his wife disposed of various articles of personal property including law books and an air conditioner. All of his cases were adjourned to October and were left in the control of a junior

associate, who was told that he could retain the fees in the matters.

On the other hand, the petitioner supposedly left India leaving behind a good portion of his furnishings and leaving his sister in charge of a bank account worth $10,000.

I have concluded, therefore, that Magistrate Goettel would be well within the evidence had he concluded that Jhirad had formed the necessary intent to flee prosecution at the time he left India on July 26, 1966. But it is not my province to try the matter *de novo;* it is sufficient for me to determine whether the conclusions of the Magistrate are supported by the evidence. In this it must be said that it is clear that the Magistrate was most fair. There is some evidence in the record that prior to 1966, when Jhirad took his family on trips to Europe, they would often take a vacation in Switzerland. The longest these vacations lasted was a month but generally they were restricted to one week. It would seem that the Magistrate theorized that the intent to flee matured when the supposed "vacation" in Switzerland exceeded by 150 per cent the longest prior vacation; and when combined with the facts set out above that the preponderance of the evidence would point to a solidified intent to flee to avoid prosecution. Certainly such "a striking change in [petitioner's] habits as to his customary places of resort" is a relevant consideration under *Brouse v. United States,* 68 F.2d 294, 296 (1st Cir. 1933).

I find that the Magistrate's finding and conclusion on the issue of intent is well-documented in the record and I will not overturn it.

■ The petitioner argues, however, that for there to be a tolling of the statute of limitations it is imperative that the petitioner have actually left India with the intent to flee prosecution and that intent had to have been fully matured at the time of leaving. I hold otherwise. To fully ascertain the question of intent one must examine the operation of another man's mind which is always a difficult problem for a finder of fact. Often judges are called upon to make this determination by evidence as to what happens after the crucial time. This is all that happened in this particular case. And rather than relate back the evidence concerning the maturation of intent the Magistrate gave petitioner every advantage in his construction of the evidence.

■ In any event, even if a defendant learns of potential prosecution while he is without a state and for that reason alone chooses not to return to his normal state, there may be a question of flight from justice. The question has been resolved against the petitioner and the evidence fully supports that ruling.

■ The petitioner also argues, without citation to any authority, that the burden of proof which the Government of India must bear to show that Jhirad was a fugitive from justice in the extradition proceeding must be that required in an ordinary criminal case in this country, i. e., that each element must be proved beyond a reasonable doubt. The petitioner claims that the Government of India did not establish "intent to flee" beyond a reasonable doubt and Magistrate Goettel has so found. Additional Findings, p. 12.

The treaty under which India seeks to extradite petitioner provides that "the extradition shall not take place if . . . exemption from prosecution or judgment has been acquired by lapse of time, according to the laws of [either country]." Petitioner argues that this provision requires that in determining whether the statute of limitations was tolled I must apply the traditional standard used in criminal cases, i. e., beyond a reasonable doubt. I find no support for petitioner's position in either the language of the treaty or the case law on this subject.

As I stated in an earlier opinion in this case: "It is important to remember the context within which this decision must be made. This is an extradition

case, involving activity which has taken place halfway around the world. The extradition procedures afforded by statute seek to preserve an element of judicial surveillance over a procedure which is basically an action of international comity. . . . In fact, the procedures fall strikingly short of a full trial." 362 F.Supp. 1060. The Magistrate correctly rejected the petitioner's reasonable doubt argument.

The petitioner puts forth two additional arguments: one, that the Magistrate had no power to make findings on the issue of the remand, and two, the evidence relied upon was incompetent and inadmissible because it denied him of the opportunity to confront and cross-examine the witnesses against him. I find that in the context of an extradition proceeding both of these arguments are without merit and that the procedures followed by the Magistrate were correct.

The petition for a writ of habeas corpus is denied.

So ordered.