JOHN B. EARLE vs. J. W. HARRISON AND OTHERS.

In December, 1859, A agreed to sell to B a tract of land for $2,250, received from the latter his note for the pu·chase money, and gave him a bond for title on payment of the not·. B made payments on his note, leaving a balance of $1,667.67 due thereon on May 21, 1862, on which day B sold his interest in the land to W and H for $3,000, transferred to H the bond for title, and they paid him by giving their sealed note to A for $1,667,67, the balance due him, and their note to B for $1,332.33: *Held*, That, as between A and W and H, the transaction was not within the ordinance of September, 1865, and that A was entitled to recover from them the full amount of their note to him.

BEFORE ORR, J., AT ANDERSON, MAY TERM, 1870.

Bill for specific performance of a contract for the sale of a tract of land.

The bill stated that on December 25th, 1859, the plaintiff bargained with Ezekiel Harris, one of the defendants, to sell him a tract of land, describing it, for $2,250, received his note for the purchase money, and gave him a bond to make title when the note should be paid; that Harris took possession of the land and made payments on the note, leaving a balance of $1,667.67, due thereon on the 21st May, 1862; that on that day Harris, with the consent of the plaintiff, sold his interest in the land to the defendants, J. W. Harrison and H. H. Whitaker, who gave to the plaintiff their note, under seal, for the balance due him by Harris; that the latter then assigned to Harrison the bond for title, and that Harrison and Whitaker entered into possession of the land. The bill prayed specific performance of the contract, or that the land be sold and the proceeds applied in payment of the amount due the plaintiff.

The defendants filed separate answers. They all admitted the facts alleged by the plaintiff to be substantially true. Harris stated that he assigned the bond for title to Harrison, and conveyed the land to Whitaker. Harrison stated that Whitaker was the purchaser of the land from Harris; that the price he agreed to pay for it was $3,000; that he (Harrison) became surety on the note to the plaintiff, and that the bond for title was as "collateral security." Whitaker stated that he and his "joint tenant" purchased the land from Harris at the price of $3,000; that he purchased at an "enhanced price, in consequence of the depreciation of the currency of the country, and enhancement of all values," and he claimed "the benefit of the Ordinance of the Convention relating to contracts of this nature, and that the note may be reduced to its true value."

The decree of His Honor the Circuit Judge is as follows:

ORR, J. The bill filed in this case by complainant is to compel the defendant, J. W. Harrison and H. H. Whitaker, to pay the balance of the purchase money of the Centreville Mills, and the tract of land appurtenant thereto, or to surrender his bond for titles given to one E. Harris, which has been assigned by said Harris to Harrison. It appears that, in 1859, Earle, the complainant, sold the mills and tract of land (300 acres,) to Harris, for the sum of $2,250.00. That, on the 21st day of May, 1862, Whitaker and Harrison purchased from the said Harris his interest in the said tract of land on that day, and executed to Harris their note for $1,332.33 cents, which they subsequently paid, and also their note to the complainant for $1,667.67, it being the balance of the purchase money due by Harris to Earle, deducting the payments Harris had made to him. Harris, thereupon, assigned the bond for titles he held from Earle to Harrison. The only question in the case is this: Shall the defendants be permitted to set up their purchase as a Confederate transaction, and show the value of the property at the time, or shall they be held to pay complainant the full amount of his note, dated in May, 1862, without reference to the value of the property purchased?

The proof taken in the case shows that they agreed to pay Harris for the mills and land, in 1862, the sum of three thousand dollars, and a little more than two years before he had purchased the same from complainant for two thousand two hundred and fifty dollars. Harris, in the meantime, had reduced his debt by payments to $1,667.67, the amount of complainant's note sued on in this case. When he transferred his contract and bond for titles to defendants, Harrison and Whitaker, with Earle's consent, and when Earle accepted their note in lieu of Harris', he made himself a party to the new contract, and cannot now recover from defendants more than Harris could claim if he were complainant in this case.

The testimony is somewhat conflicting as to the value of the land in 1862, in good money—the estimates of the witnesses varying from $2,000 to $2,500. I shall take the medium of the valuations, which will be $2,250, and that is the sum at which complainant sold to defendant Harris, in 1859. The value of the property at the time of sale was $3,000, in Confederate money; but, instead of adopting the value of Confederate money as the measure of recovery in this case, I take the value of the *property* as the *true standard at the time of sale.* Assuming $2,250 as the true value of the property

28A

in 1862, what should be the recovery in the case against Harrison and Whitaker? It should be twelve hundred and fifty dollars and seventy-five cents, ($1,250.75,) and interest on the same from the 21st day of May, 1862, until the 1st day of August, 1870—seven hundred and seventeen dollars and forty-five cents, ($717.45)—making the aggregate sum due one thousand nine hundred and sixty-eight dollars and twenty cents on the 1st August, 1870.

It is, therefore, adjudged, ordered and decreed that the said James W. Harrison and H. H. Whitaker do pay to the said John B. Earle the sum of one thousand nine hundred and sixty-eight dollars and twenty cents, with interest from the 1st day of August, 1870, on the sum of twelve hundred and fifty dollars and seventy-five cents, on or before the first Monday in October next; and, in case of failure to pay the same, that the tract of land and mills described in the pleadings be sold by the Sheriff of the County, on the first Monday of November next, after giving twenty-one days' notice by public advertisement, for cash. On payment of the said sum of money by the said Harrison and Whitaker, the said John B. Earle shall execute a good and legal title to the parties aforesaid, with all proper renunciation of dower. And, should the same be sold as herein ordered, the said Earle shall execute title to the purchaser, with proper relinquishment of dower, &c.; the costs of papers and stamps to be paid by the purchaser.

It is ordered that the costs of this bill be paid by the defendants, Harrison and Whitaker, and the bill be dismissed as to Ezekiel Harris, at the cost of the parties.

The plaintiff appealed, and now moved this Court to reform and modify the decree on the following grounds, and in the following particulars:

1. Because it is a total misconception of the relations and rights of the parties to the cause above mentioned, to assume that the plaintiff, by accepting the note of Harrison and Whitaker for sixteen hundred and sixty-seven dollars and sixty-seven cents—the residue of the purchase money of the land sold by plaintiff to the defendant, Harris—became a party to the contract of sale between Harris and Harrison and Whitaker, of the date of 21st of May, 1862, and that his sale of land to Harris, in 1859, should be regarded, as to Harrison and Whitaker, as a sale to them on the 21st of May, 1862.

2. Because, in no just sense, can the plaintiff be regarded as the

vendor of the land described in the pleadings to Harrison and Whitaker, they being the vendees or assignees of the equity in the land by Harris, purchased from the plaintiff, and the consideration of the note of Harrison and Whitaker to the plaintiff being the extinguishment of the debt to the plaintiff of Harris, and his release from its obligation.

3. Because the sale of the land by plaintiff to Harris, in 1859, and the sale by Harris to Harrison and Whitaker, in May, 1862, were transactions, not only at different times, and for different sums or prices, but between different parties; and the execution and delivery of their note to the plaintiff for the purchase money due to him by Harris, was merely the payment to Harris of the purchase money stipulated by Harrison and Whitaker to be paid to him.

4. Because the most favorable view of the right of Harrison and Whitaker, as the vendees or assignees of the equitable title of Harris, is that they occupy the position of Harris to the plaintiff, and are entitled to his equities, but to no higher equities than Harris; and, on payment to the plaintiff of the purchase money due by him, are entitled to demand titles to themselves under plaintiff's bond for titles to Harris.

5. Because the sale of the land, by plaintiff, to Harris having been made in 1859, and the consideration of the note of Harrison and Whitaker, to the plaintiff, being the extinguishment of Harris' debt to him, neither transaction is within the terms of the Ordinance of 1865.

6. Because the judgment of the Circuit Court should have been rendered for the principal sum of the note of Harrison and Whitaker to the plaintiff, with interest agreeably to its terms, without abatement or diminution.

7. Because the judgment of the Circuit Court requires the plaintiff, on payment of the inadequate sum set down in the judgment, or on the sale of the land, to execute and deliver a good and legal title to the land in question, "with all proper renunciation of dower," thereby constraining the wife of the plaintiff, who is not a party to the cause, to renounce her dower, whether she be willing or unwilling, or subjecting the plaintiff to attachment for not doing an act which he has no power or ability to perform.

8. Because the bill should not have been dismissed as to Harris, but as all the parties in interest were before the Court, their rights and equities to each other, in the premises, should have been adjusted and adjudicated in this cause.

*Burt,* for appellant:

This case suggests but two questions for discussion :

First. Whether the contract between the parties is embraced by the Ordinance of the Convention of 1865, or the Act of 1869.

Second. If within the contemplation of either, then what was the consideration of the obligation of defendants to plaintiff?

The following are extracts from the Ordinance and from the Act:

The Ordinance of 27th September, 1865, p. 177, Sec. 4, confirming and making valid "sales, conveyances, contracts," &c., made since 19th December, 1860, contains the following proviso:

"Provided, That in every action arising on any contract, whether under seal or by parol, written or oral, made between the first day of January, in the year of our Lord one thousand eight hundred and sixty-two, and the fifteenth day of May, in the year of our Lord one thousand eight hundred and sixty-five, it shall be lawful for either party to the action to introduce testimony showing the true value and real character of the consideration of such contract at the time it was made, so that, regard being had to the particular circumstances of each case, such verdict or decree may be rendered as will effect substantial justice between the parties."

The Act of 26th March, 1869, Sec. 1, p. 277, is in the words following:

"That the value of all debts and obligations, whether under seal or not under seal, created or contracted in Confederate States notes, or with reference to Confederate States notes, as a basis of value, issued by the so-called Confederate States Government, or in or by any bills, bonds or notes assimilated or made equivalent in value to Confederate States notes by any law or custom of trade during the years 1861, 1862, 1863, 1864 and 1865, shall be determined by the value of the said Confederate States notes in the lawful money of the United States at the time such debts or obligations were created or contracted."

The price or motive of the contract is the consideration.—2 Bl. Com., 144.

An injury to the party to whom the promise is made, or a benefit to the party promising, is a sufficient consideration.—3 John. R., 100; Chit. on Con., 29, 30; 1 Caine's, 45.

A., being indebted to B. for money won at play, gave his note for $500 to C., to whom B. was indebted, upon which C. released the debt of B., was held a good consideration, and the note of A. held

to be valid.—*Bowen* vs. *Doggett*, 2 Mill, 127; *Stewart* vs. *Eden*, 2 Caine's Rep., 150; *Jackson* vs. *Henry*, 10 Johns. R., 185.

*Reid & Brown*, contra, filed no brief.

May 30, 1871. The opinion of the Court was delivered by

MOSES, C. J. The bill states that on the 25th day of December, 1859, Earle, the plaintiff, agreed to sell to Ezekiel Harris, one of the defendants, the land referred to in the pleadings, at the sum of $2,250, who gave his note for the amount and received a bond for the delivery of title when the note was fully paid. Harris went into possession, and some time in May, 1862, having paid a portion of the purchase money, the defendants, Whitaker and Harrison, bought from him, (the said Harris,) his interest in the land at the price of $3,000, and the said Harrison received from him an assignment of the bond, which he held for title from Earle, who assented to the transfer, taking from Whitaker and Harrison their note, payable at one day, for $1,667.67, being the balance due him on the Harris note. It prays that Harrison and Whitaker be required specially to perform the contract under which they hold the said bond for title, by paying the amount due on their note, he being ready and willing to make title, or that, in default of such payment, the land be sold, and the proceeds applied to the said note, so far as may be necessary for its satisfaction.

The answer of Harris substantially admits the facts as alleged in the bill, except that it states that the sale of his interest in the land was made to Whitaker, and the assignment of the bond for title was to Harrison. Whitaker answers that the transfer of the interest of Harris in the land was to him and Harrison, and says nothing of the bond. Harrison answers, in effect, that the sale was to Whitaker, for whom he joined in the note to plaintiff as surety, and that the bond was assigned to him as collateral security for his liability thereon.

The defence which the Circuit Judge seems to have considered as material, arises out of the answer of Whitaker, to wit, that the purchase was "a Confederate transaction," and the makers of the note only liable to respond to it as one of that character, and are to be permitted to shew the value of the property at the time they bought of Harris, or, in other words, that the contract was subject to the provisions of the Ordinance of 1865.

The decree proceeds upon the ground that when Harris assigned

the bond for title, the plaintiff, by giving his assent thereto, and accepting the note of Harrison and Whitaker for the balance due on that of Harris, so made himself a party to the new contract that he is bound by its results to the same extent as if Harris himself were now complaining against his co-defendants.

This view of the liability of the plaintiff to an abatement of the amount due on the note now held by him cannot be sustained. He was no party to the agreement between the defendants. Harris could have assigned his bond without his consent, and his mere reception of the note of Whitaker and Harrison, in substitution of the balance due him on that of Harris, can, in no wise, change his rights under his contract with the latter, as to the sum for which he originally agreed to sell to him. The acceptance of the note for the balance unpaid on the Harris note was an act of grace and favor to the other parties, which, by the decree, is made to operate as a wrong and with prejudice to him. He sold in 1859, to be paid in gold or silver coin, or its equivalent representative. He received no additional price as a consideration for the note of Harrison and Whitaker, which he took for the balance due him by Harris. When in 1862, they agreed to purchase, a sale by plaintiff to a third party, without his consent, would have been a fraud on Harris, to whom he had already contracted to sell, and who, under the bond, could, on payment of the amount due on his note, have compelled the execution of a title to him.

It is difficult to perceive on what principle of law or equity the plaintiff, on the facts before the Court, could be deprived of any of his rights under his sale to Harris. There is no proof that on the subsequent arrangement he agreed to abate anything on the Harris note; so far from it, the defendants, Harrison and Whitaker, actually gave him their note for the full balance due him, thus refuting the idea of any intention, at the time, to change his original contract as to the sum he was to receive in payment for the land. In no sense can his claim be made subject to the provisions of the Ordinance of 1865, as claimed by the two defendants, and to hold him bound by its operation would be inconsistent with the very purpose it was intended to accomplish.

It is ordered and adjudged that the decree of the Circuit Court, except as to the dismissal of the bill against Harris and the payment of costs, be set aside.

It is further ordered that on the payment, on or before the 15th day of July next, by the said Harrison and Whitaker, to the said

plaintiff, of the full amount which may be then due on their note, he, the said plaintiff, do execute title to the said Harrison for the land referred to in the pleadings, and thereupon the said Harrison shall deliver to the plaintiff the bond for title assigned to him by Harris. On default of payment by the day aforesaid, the Sheriff of Anderson County, after due advertisement, shall proceed, on the sale day in September next, to sell the said land at public outcry for cash, and shall apply the proceeds, so far as may be sufficient, to the payment of the amount then due on the note above referred to, the balance, if any, to be paid into Court, subject to its order.

The plaintiff to be at liberty to apply to the Circuit Court for any order necessary to give full effect to the judgment of this Court now pronounced, and the said Whitaker and Harrison to have leave to apply to the said Court for any orders necessary to settle the equities between them arising out of the transaction which forms the subject-matter of the bill.

*Willard,* A. J., and *Wright,* A. J., concurred.