Elijah Ephraim JHIRAD,
Petitioner-Appellant,

v.

Thomas E. FERRANDINA, United States
Marshal, Southern District of New
York, Respondent-Appellee.

No. 568, Docket 75–2102.

United States Court of Appeals,
Second Circuit.

Argued Feb. 9, 1976.

Decided April 12, 1976.

Rehearing Denied May 21, 1976.

Edwin A. Steinberg, New York City, for Government of India, real party in interest.

Edward L. Sadowsky, New York City (Tenzer, Greenblatt, Fallon & Kaplan, New York City, on the brief), for petitioner-appellant.

Before LUMBARD and TIMBERS, Circuit Judges, and BRYAN,* District Judge.

LUMBARD, Circuit Judge:

Elijah Ephraim Jhirad appeals from an order of the Southern District entered July 17, 1975, denying his third request for habeas corpus relief in this protracted international extradition proceeding. The Government of India seeks Jhirad's return for prosecution on charges of embezzlement from a Naval Prize Fund which he, as former Judge Advocate General of the Indian Navy, was responsible for administering. In an earlier opinion in this case, 486 F.2d 442 (2d Cir. 1973), (Jhirad I), we ruled that 49 of the 52 counts listed in India's functional equivalent of our indictment were time barred, but remanded for a finding as to whether appellant had left India with intent to avoid prosecution thus tolling the statute of limitations with respect to the final three incidents.

Jhirad now challenges Magistrate Goettel's determination, approved by Judge Duffy, that appellant's "constructive flight" in not returning to his homeland when he otherwise would have but for fear of the pending criminal investigation was sufficient to satisfy the tolling requirements of 18 U.S.C. § 3290.[1] Jhirad contends that this conclusion exceeded our mandate on remand and thereby violated the law of the case, that it followed a hearing at which appellant was denied discovery to which he was entitled, that it was in any event unsupported by the evidence adduced and that it was based on an erroneous interpretation

---

* Sitting by designation.

1. 18 U.S.C. § 3290 reads as follows: "No statute of limitations shall extend to any person fleeing from justice." Its tolling provision applies to this case, along with the basic five year federal statute of limitations, 18 U.S.C. § 3282, pursuant to Article 5 of the extradition treaty, 47 Stat. 2122, which gives the accused the benefit of the shorter period available in either the requesting country or the asylum country. India has no statute of limitations, although the amount of time elapsed since the commission of the crime may be considered by the court at the close of the case in determining whether the defense has been unduly prejudiced by the passage of years. See *Assistant Customs Collection—Bombay v. Melwani*, 2 S.C.R. 438 (1968).

of 18 U.S.C. § 3290. We affirm, finding no merit in any of these contentions.

The facts underlying Jhirad's indictment are fully set forth in the prior decisions of this court, the district court and the magistrate, and will therefore be only briefly summarized here. In late 1958, while appellant was serving as Judge Advocate General of the Indian Navy,[2] Great Britain transferred to the Indian Navy 1,973,679 rupees[3] for distribution as a prize fund to those Indians who had seen at least 180 days of active sea duty during World War II. Jhirad, appointed administrator of the fund along with two others, was personally responsible for the distribution of approved claims. He was accordingly authorized to withdraw monies from the bank account established for the fund with the counter signature of P. L. Sharma, secretary to the fund. Between February 1959 and September 1961 virtually the entire allotted sum was disbursed.

In November 1965, Naval Headquarters in New Delhi received a complaint from an ex-sailor that prize fund money due him had never been paid.[4] Admiral Nair, Chief of Personnel, contacted Jhirad to have him check into the matter. When appellant indicated that he could not produce a list of payees since no audit of the fund had ever been conducted and all records pertaining to the fund had been destroyed pursuant to his instructions, Nair alerted his superiors who in turn notified the Special Police Establishment. An investigation was then begun during the course of which Nair again spoke to Jhirad in June 1966, asked him to turn over all relevant documents and was told that none existed. At approximately the same time, appellant was informed that a subpoena duces tecum had been issued to the Central Bank of India, at which both the prize fund account and his personal account were maintained.

On June 17, 1966, the Secretary-General of the World Jewish Congress invited Jhirad to attend an international conference in Brussels during the early part of August. Appellant, who had long been an outspoken advocate of Zionism and Jewish causes, had in the past attended similar meetings, the last one being in 1961. Prior to his departure on July 26, 1966, appellant and his wife sold various of his law books along with other of their personal possessions. Jhirad, moreover, adjourned all cases pending in his private law practice until October. In addition, the entire family obtained passports and procured visas for Belgium, France and Switzerland. Meanwhile, the inquiry into Jhirad's conduct was officially registered with the Central Bureau of Investigation on July 2, 1966.

After a brief stopover in Switzerland, Jhirad attended the conference in Brussels from July 30 to August 10, 1966. From there, he travelled to Geneva where he lived openly until the summer of 1967, when he emigrated with his family to Israel. In June 1971, appellant came to the United States. One year later, he was arrested and held for extradition on the above noted charges.

On the basis of the foregoing evidence, Magistrate Goettel concluded that while Jhirad "left India for the primary purpose of attending the World Jewish Congress in Brussels," he was already aware of the pending investigation, considered the possibility that he would never return and perceived his trip as an opportunity to contemplate his future away from the immediate pressures of New Delhi. The magistrate further found that appellant's decision to expatriate crystallized sometime in early September 1966, thus tolling the five year statute of limitations with respect to the final two alleged acts of embezzlement on September 25 and 27, 1961. That calculation was premised upon the fact that Jhirad's journeys to conferences abroad in four previous years, even when coupled with his

**2.** The post of Judge Advocate General is the highest civilian post in the Indian Navy.

**3.** This amounted to slightly over $400,000 at the then current exchange rate.

**4.** As Magistrate Goettel pointed out, there is no evidence that this individual, or any other, failed to receive his money after filing a *proper* claim.

annual vacation, never exceeded one month. Magistrate Goettel reasoned, upon the basis of appellant's past practices, that by the time Jhirad had been gone for a month and a half, he must already have decided not to return. Judge Duffy agreed, adding that had he been the factfinder he "would perhaps have determined that the 'intent to flee' to avoid prosecution was formed even prior to the time Jhirad left India." This appeal followed.

■■■ Orders of extradition are *sui generis*. They embody no judgment on the guilt or innocence of the accused but serve only to insure that his culpability will be determined in another and, in this instance, a foreign forum. They may, moreover, be issued by any state judge, federal judge or, as here, a magistrate acting upon the direction of a district court, 18 U.S.C. § 3184. Extradition orders do not, therefore, constitute "final decisions of a district court," appealable as of right under 28 U.S.C. § 1291. *Jimenez v. Aristeguieta*, 290 F.2d 106 (5th Cir. 1961). Rather, if review is to be had at all it must be pursued by a writ of habeas corpus. See *Shapiro v. Ferrandina*, 478 F.2d 894 (2d Cir. 1973). This procedural idiosyncrasy has important substantive consequences. The rule has long been accepted that a habeas judge can only "inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970, 972 (1925). See also, *Benson v. McMahon*, 127 U.S. 457, 463, 8 S.Ct. 1240, 1243, 32 L.Ed. 234, 236 (1888).

■■ Accepting, as he must, this limited scope of review, Jhirad nevertheless argues that the evidence introduced at the hearing below was insufficient to "block out those elements" which would be essential for conviction were he tried for the analogous crime of embezzlement in the courts of New York State.[5] *Collins v. Loisel*, 259 U.S. 309, 317, 42 S.Ct. 469, 472, 66 L.Ed. 956, 960 (1922). We do not agree. The Government of India has amply established that appellant was administrator of the Naval Prize Fund with joint authority to withdraw monies therefrom, that he did on numerous occasions withdraw such monies and that shortly following many of those withdrawals, he deposited closely equivalent sums in his personal bank account.[6] Jhirad concedes this much. He insists, however, that to make out a prima facie case of embezzlement, India must additionally show that some bona fide claimant was denied his rightful share in the fund.

This is simply not the law in New York or elsewhere. Embezzlement, now subsumed under the general category of larceny, is defined in New York Penal Code § 155.05 as the wrongful taking of "property from an owner thereof." Jhirad asserts that he could not have embezzled money from the Indian government since the Indian Navy had no reversionary interest in the fund which, by its terms, was to be distributed in its entirety among the eligible claimants according to a pre-set formula. Appellant omits to note the equally obvious point that he similarly had no title to the earmarked fund. Any money which he nonetheless diverted to his personal use was, as a result, unavailable to those to whom it properly should have gone. No more need be shown.

---

5. Appellant was actually charged with the crime of Breach of Trust of a Public Servant, Indian Penal Code § 409. As defined in § 405, a criminal breach of trust occurs whenever one, "being entrusted with property . . . dishonestly misappropriates or converts to his own use that property in violation of any direction of law . . . ."

There was expert testimony below that the elements of criminal breach of trust in India are identical to those required to prove embez-

zlement in the United States. Tr. 121–22. Throughout this litigation, both parties have argued on that basis.

6. For example, on September 29, 1961, Jhirad withdrew the sum of 30,000 rupees from the Naval Prize Fund. The following day, he deposited 14,000 rupees in cash in his personal account. On September 27, 1961, Jhirad withdrew 10,000 rupees from the fund and that same day, deposited 5,000 rupees in his personal account.

See *State v. Nelson*, 362 Mo. 129, 240 S.W.2d 140, 142 (Sup.Ct.1951).

The question of Jhirad's "constructive flight" from India is a more troublesome one. At the outset, we must confront appellant's challenge to the magistrate's ruling as beyond the scope of our earlier mandate. In Jhirad I, we decided as a matter of first impression in this circuit, that the tolling provision of 18 U.S.C. § 3290 is available only if "an intent to flee from prosecution or arrest" is shown. 486 F.2d at 444. Since the district court had proceeded on the mistaken assumption that Jhirad's mere absence from India was sufficient to halt the running of the statute of limitations, we remanded for "findings on the issue of intent." Judge Duffy, in turn, referred the matter to Magistrate Goettel.

Reading the above-quoted language in its most literal sense, appellant contends that the magistrate overstepped the bounds of his delegated duty and violated the law of the case by inquiring into Jhirad's motivation in not returning to his homeland. An examination of the opinion as a whole, however, plainly reveals that our concern then, as it is now, was with the reason for Jhirad's *absence* from India. Indeed, we specifically and approvingly cited *Donnell v. United States*, 229 F.2d 560, 565 (5th Cir. 1956), for the proposition that "those persons shall be denied the benefit of the statute of limitations who have absented themselves from the jurisdiction of the crime with the intent of escaping prosecution." 486 F.2d at 444.

We are convinced that the notion of "constructive flight" developed by the magistrate, although concededly without precedent, is fully supported by both the language and the logic of 18 U.S.C. § 3290.[7] We cannot agree with Jhirad that a meaningful distinction exists between those who leave their native country and those who, already outside, decline to return. In *Streep v. United States*, 160 U.S. 128, 135,

16 S.Ct. 244, 247, 40 L.Ed. 365, 369 (1895), the Supreme Court rejected just such a formalistic approach. The Court there held that it was unnecessary to prove that the defendant had fled the jurisdiction of a particular court, state or federal, if it could be established that his movements were prompted by a desire to avoid and thwart the orderly workings of the judicial process. We believe that principle to be applicable here.

We note, moreover, that even were we to agree with appellant that our opinion in Jhirad I neither anticipated nor justified the magistrate's determination of "constructive flight," the law of the case doctrine is only discretionary in this circuit and we are therefore free, as an appellate court, to revise our earlier ruling in the light of new evidence presented at the subsequent hearing. See *United States v. Fernandez*, 506 F.2d 1200, 1203 (2d Cir. 1974).

Jhirad's argument that there was no evidentiary basis for the magistrate's finding of "constructive flight" is without merit. India introduced sworn statements from three individuals who claim to have alerted appellant to the pending criminal investigation prior to his departure for Brussels in July 1966[8] as well as the affidavit of a New Delhi book dealer who, during the same period, purchased a substantial portion of Jhirad's law library. Other personal effects were also sold. We agree with Judge Duffy, 401 F.Supp. 1215, 1218 (S.D.N.Y.1975), that these indicia strongly suggest that, despite appellant's disclaimer, his intent in leaving India was to avoid prosecution. Cf. *Brouse v. United States*, 68 F.2d 294, 296 (1st Cir. 1933). Jhirad's emphasis upon his testimony that he left behind some home furnishings and $10,000 seems to us at best ambiguous and self-serving since he said that he left the money with his sister.

We are not, however, prepared to say that Magistrate Goettel was clearly errone-

---

7. See note 1, supra.

8. In addition to the conversations with Admiral Nair and the bank employee, previously noted, Commander Swamy of the Indian Navy also claims to have spoken to Jhirad in May 1966 about the destruction of the prize fund records. Appellant denies all three of these alleged talks.

ous in his determination that Jhirad's primary purpose in travelling to Belgium during the summer of 1966 was to attend the World Jewish Conference, or that Judge Duffy erred in accepting this finding. But, insofar as we feel that a contrary ruling would have been clearly supported and was perhaps even indicated, we see no reason to disturb the less drastic finding that Jhirad formed a definite intent not to return to India in early September of that same year, by which time he had already been out of the country for a longer period than on any of his previous similar trips.

■ Jhirad contends that the evidence summarized above presents a distorted picture which he was powerless to remedy since Judge Duffy denied his request for discovery. *Jhirad v. Ferrandina*, 401 F.Supp. 1215 (S.D.N.Y.1974). Appellant does not dispute the well-entrenched rule that extradition proceedings are not to be converted into a dress rehearsal trial. See *Charlton v. Kelly*, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). Rather, he stresses that the hearing below occurred on remand from a habeas appeal and that he was therefore entitled to all the procedural protections afforded by 28 U.S.C. § 2246. See also, *Harris v. Nelson*, 394 U.S. 286, 89 S.Ct. 1082, 22 L.Ed.2d 281, *reh. den.*, 394 U.S. 1025, 89 S.Ct. 1623, 23 L.Ed.2d 50 (1969).

The decision in *Harris* upon which appellant so heavily relies merely points out that the district judge has the right to authorize such discovery procedures "as law and justice require," 28 U.S.C. § 2243. It plainly does not compel their availability no matter what the circumstances. The procedural posture of this particular case does not, moreover, affect its basic nature or purposes. It is still appellant's extradition which is being sought.

Here, the sole issue being contested was Jhirad's intent in absenting himself from India in August and September 1966. This is a question peculiarly within the capacity of the appellant to answer. Its resolution would not have been appreciably advanced by allowing him to inspect, *inter alia*, his entire Navy personnel file as he asked to do. Nor has Jhirad demonstrated any prejudice flowing from Judge Duffy's ruling. Cf. *U. S. ex rel. Petrushansky v. Marasco*, 325 F.2d 562 (2d Cir. 1963), cert. denied, 376 U.S. 952, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964), reh. denied, 377 U.S. 920, 84 S.Ct. 1178, 12 L.Ed.2d 188 (1964). Under the facts here presented, we hold that Judge Duffy properly exercised his discretion in denying discovery.

■ Jhirad next urges that India was obligated to prove beyond a reasonable doubt both the motivation and timing of his decision not to return to his homeland. We agree with the magistrate and district court, however, that the applicable standard on this issue is only preponderance of the evidence and that, for the reasons already noted, India's proof fully satisfied this less exacting test.

Jhirad argues that the reference in Article 5 of the extradition treaty to the five year statute of limitations of 18 U.S.C. § 3290 compels the conclusion that the drafters similarly intended to incorporate the burden of proof in a domestic criminal prosecution, whereby the state would have to show beyond a reasonable doubt that the relevant statute of limitations had not expired. *People v. Kohut*, 30 N.Y.2d 183, 331 N.Y.S.2d 416, 419, 282 N.E.2d 312 (Ct.App. 1972).

■ It is of course axiomatic that the reasonable doubt standard lies at the foundation of our notions of due process in criminal cases. *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368, 374 (1970). As enunciated by the Supreme Court in *Winship*, it advances the important societal goals of minimizing the risk of erroneous convictions and promoting public confidence in our judicial system. See also *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Plainly, however, these interests apply with less force in the context of an international extradition proceeding. It is well to remember that Jhirad's ultimate culpability will not be determined in the United States. It is not the business of our courts to assume the respon-

sibility for supervising the integrity of the judicial system of another sovereign nation. Such an assumption would directly conflict with the principle of comity upon which extradition is based. *Factor v. Laubenheimer*, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933).

On the other hand, we believe it is fair that India be required to show by a preponderance of the evidence that the statute of limitations has been tolled by Jhirad's conduct. Unlike the elements of the offense, for which only probable cause need be established, *Collins v. Loisel*, supra, the question of whether Jhirad's prosecution is time barred will not again be reviewed in India.[9]

Appellant's final claim is that his extradition is politically motivated and thus barred by the terms of the treaty. Article 5 thereof provides as follows:

A fugitive criminal shall not be surrendered if the crime or offence in respect of which his surrender is demanded is one of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for a crime or offence of a political character.

Jhirad maintains that his impending prosecution, and the diligence with which India has through the years sought his return, may be best explained by India's desire to punish him for his outspoken advocacy of Israeli causes at a time when India's national policy favored the Arab bloc. He asserts that he was warned about his activities while still in India and placed under police surveillance. The record is clear, however, that throughout those same years, Jhirad held the highest civilian office in the Indian Navy, was allowed to travel abroad freely and was honored with the designation of Senior Advocate by the Indian Bar Association.

Whatever weight may properly be given to any such claims, it is surely beyond dispute that the embezzlement of money from a Naval Prize Fund, which Jhirad as a public servant was responsible for administering, is not in any sense a political offense. The record shows enough to indicate that India was not without a substantial basis for prosecuting Jhirad for his failure to account for funds entrusted to his control. Cf. *In re Gonzalez*, 217 F.Supp. 717, 722 (S.D.N.Y.1963).

Affirmed.

### On Petition for Rehearing

Elijah Ephraim Jhirad having petitioned for rehearing by notice of motion dated April 23, 1976, it is hereby ordered that the petition is denied.

In an opinion rendered on April 12, 1976, we affirmed an order of the Southern District denying Jhirad's request for habeas corpus relief from a writ of extradition requiring his return to India for trial upon charges of embezzlement. Jhirad now petitions for reconsideration of that decision upon various grounds, only one of which merits discussion.

Jhirad contends, for the first time, that the magistrate's decision which formed the predicate to both our own ruling and that of Judge Duffy is void for lack of jurisdiction. Specifically, Jhirad argues that Magistrate Goettel, proceeding on remand from an earlier habeas petition, was without authority to conduct, as he did, an evidentiary hearing. Jhirad cites *Wingo v. Wedding*, 418 U.S. 461, 472, 94 S.Ct. 2842, 2849, 41 L.Ed.2d 879, 887 (1974) for the proposition that "§ 2243 requires that the

---

9. See note 1, supra.

As a corollary to his claim that the statute of limitations has run, Jhirad also contends that he was irremediably prejudiced by Judge Duffy's fourteen-month delay in deciding this third and latest petition for habeas corpus. When judged against the thirteen years which had already elapsed since the alleged commission of the crime, we cannot agree that this additional period of waiting so hampered appellant's ability to prepare his defense as to warrant the grant of the writ. We note, moreover, that the Sixth Amendment's guarantee to a speedy trial, limited by its terms to criminal prosecutions, is inapplicable to international extradition proceedings. Cf. *Middendorf v. Henry*, —— U.S. ——, 96 S.Ct. 1281, 47 L.Ed.2d 556, 44 U.S.L.W. 4401 (1976).

486

District Judge personally hold evidentiary hearings in federal habeas corpus cases. . . . "

Jhirad would thus impose a bifurcated structure on international extradition proceedings, conceding the authority of the magistrate under 18 U.S.C. § 3184 to conduct an evidentiary hearing prior to issuing the writ of extradition but denuding him of that power once the writ has been issued and review sought through the only available avenue of relief—a petition for habeas corpus. Such an approach is supported neither by logic nor law. The impracticality of totally prohibiting the continued participation of the one judicial officer who, as here, is often most familiar with the underlying facts of the case is readily apparent. *Wingo v. Wedding, supra,* upon which Jhirad relies as compelling this anomalous result, arose in the wholly different context of a domestic criminal prosecution and revolved around an interpretation of an entirely different statute, the Federal Magistrates Act, 28 U.S.C. § 636(b).

In any event, Jhirad is foreclosed from asserting this claim by his failure to raise it at an earlier stage in the proceedings. Even if Judge Duffy erred in not himself conducting an evidentiary hearing upon our remand in *Jhirad v. Ferrandina,* 486 F.2d 442 (2d Cir. 1973) (Jhirad I), that error was one of law only and did not, as Jhirad suggests, deprive the district court of jurisdiction to entertain the petition for habeas corpus nor void its order upon which our opinion in Jhirad II was based. Non-jurisdictional objections must, of course, be timely raised or they are waived. See *Wilkerson v. Meskill,* 501 F.2d 297 (2d Cir. 1974).