**Johannes Albertus BEUKES, Petitioner,**

v.

**Michael PIZZI, United States Marshal, Eastern District of New York, and Calvin Morton, Warden, Metropolitan Detention Center, Respondents.**

No. 95–CV–2159 (JG).

United States District Court,
E.D. New York.

June 13, 1995.

Donald D. duBoulay, New York City, for petitioner.

James Walden, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, for respondents.

## MEMORANDUM AND ORDER

GLEESON, District Judge:

*Background*

On April 1, 1984, in Knysna, in the Cape of Good Hope Provincial Division in the Republic of South Africa, the petitioner Johannes Albertus Beukes and two others set out to rob a fast food establishment. One of Beukes' accomplices had a handgun. He went into the store while the petitioner and the third man waited outside in Beukes' car. The owner went to the back of the premises, sent an employee to fetch the police, and then delayed the gun-toting robber. The police soon arrived. The robber killed one of the policemen, causing Beukes and the third robber in the getaway car to leave immediately. The robber with the gun was subsequently killed outside the store by other policemen. He was wearing Beukes' windbreaker, shoes and cap.

Less than two hours later, Beukes was arrested and charged with murder and attempted robbery. He was released on bail, and stood trial from August 1, 1985 to August 9, 1985, when he was convicted and sentenced to a 10–year term of imprisonment for the murder and a five-year term (two of which were suspended on certain conditions) for the attempted robbery. The court recommended that the sentences run concurrently.

Beukes sought leave to appeal, which was granted, and he remained free on bail pending appeal. On September 25, 1987, the Supreme Court of South Africa rejected his claims on the merits, and the appeal was dismissed. This disposition required Beukes to surrender to custody. He failed to do so, and a warrant was issued for his arrest.

Beukes fled to California, where, as he has put it, he "made a wrong turn when he got involved in several bank robberies." Petitioner's Brief in Opposition to Extradition, dated February 15, 1995, at 4. In fact, he was charged by federal authorities with participation in twelve robberies and one attempted robbery over the period from November 1988 through June 1989. He pleaded guilty to four of those offenses on August 10, 1989, and received a 78-month term of imprisonment.

In May 1990, the Attorney General of the Cape of Good Hope Provincial Division of the Supreme Court of South Africa received word of Beukes' conviction in the United States, and immediately took steps to prepare an extradition request, which he compiled and signed on June 12, 1991.

As Beukes' 78-month term of imprisonment for the California bank robberies neared its completion, the South African government requested a provisional arrest warrant, which was executed on February 3, 1995. On March 9, 1995, a formal extradition request was filed, seeking the extradition of Beukes for the exclusive purpose of requiring him to serve the sentence imposed in 1985.

On April 3, 1995, the Hon. Alonzo P. Wilson, a United States Magistrate Judge in the Western District of Louisiana, held a hearing on the extradition request. Judge Wilson found the available evidence sufficient to sustain the request and granted the government's application pursuant to 18 U.S.C. § 3184 for the certification to the Secretary of State of Beukes' extraditability.

On May 24, 1995, Beukes filed a petition for a writ of habeas corpus in the Western District of Oklahoma, where he was then incarcerated by the Bureau of Prisons. When Beukes was moved to the Metropolitan Detention Center in Brooklyn, New York, the petition was transferred to this Court.

Although Beukes had been represented by counsel at his extradition hearing, he filed his petition *pro se*. Accordingly, on June 1, 1995, this Court appointed counsel, who has filed a memorandum in support of the petition. Oral argument was heard on June 12, 1995.

For the reasons set forth below, the petition is denied. However, the delivery of Beukes to the South African authorities is stayed until 1:00 p.m. June 23, 1995, in order to allow him to seek a further stay from the court of appeals.

*Discussion*

An order granting certification under 18 U.S.C. § 3184 is not appealable. The only method of challenging such an order is by petitioning for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See, e.g., Spatola v. United States*, 925 F.2d 615, 617 (2d Cir.1991). The scope of review once such a petition is filed is narrow: the Court is "concerned only with whether the appellant's alleged offense fell within the terms of an extradition treaty and whether an official with jurisdiction was presented with sufficient evidence to warrant a finding that there was a reasonable ground to believe that the appellant was guilty." *Ahmad v. Wigen*, 910 F.2d 1063, 1064 (2d Cir.1990). In determining whether probable cause has been established, the certifying court may rely on an adjudication of guilt by a court in the requesting country. *Spatola v. United States*, 925 F.2d at 618 (probable cause properly found based on the submission of a certified copy of the Italian appellate opinion affirming petitioner's convictions).

Beukes does not challenge the jurisdiction of the magistrate judge or his findings that Beukes' offenses of murder and attempted robbery are covered by the extradition treaty with South Africa. Nor does he dispute the magistrate judge's finding that the offenses are amply supported by, among other things, the decision of the Supreme Court of South Africa rejecting the claims of error advanced by Beukes' appellate counsel. Rather, his principal contention is based on

his alleged fear of retribution, which is itself based on a tale of intrigue.

Beukes, who was in the South African military when he committed the offenses for which his extradition is sought, claims to have struck a bargain with the government after his conviction. Specifically, he asserts that two unnamed "gentlemen in suits," who were working for then-President Botha, arranged for his bail pending appeal in 1985.[1] They then assigned Beukes to an unnamed branch of the South African Special Forces, a "highly covert operation" which "nobody knows about." Beukes claims he was told that, in exchange for his work in this group, his appeal would be "pushed under the carpet." Beukes further claims that for two years, he debriefed informants regarding the activities of political terrorists, including those within the African National Congress ("ANC"). Upon finding out where the armed terrorists were, Beukes alleges that he and his colleagues "would go in at night with a chopper, covert operation; and we would shoot at these certain buildings ... the ANC commando[s] ... [would] come out ... and they start shooting. Now, there's a shooting in progress, and the South African police can come in with the vans and take over the situation."

Beukes claims that he has lost count of the number of times he performed this task. He further claims that in 1987, when the "liberals" in South Africa's government became aware of this covert activity, he became "expendable." At this point, Beukes alleges that a government official told him his convictions would be upheld and helped him escape. Specifically, Beukes claims that he was given money and directed to a person in the American Embassy, who arranged for his speedy escape to his country of choice, which turned out to be the United States.

 Beukes now claims that, based on this history of activity against the ANC, he fears "retribution" by the current South Afri-

can government if he is extradited. This argument has no merit. First, South Africa does not seek to extradite him for an offense arising out of his alleged political activities. Rather, it seeks extradition so that Beukes can serve a sentence for a murder for which he was convicted and sentenced before those activities allegedly occurred. Second, although Beukes claims that the ANC is "now in control of the government, and, theoretically, might seek to punish him for his anti-terrorist activities," Memorandum Of Law In Support Of Application For Habeas Relief at 4, there is no evidence other than Beukes' own speculation that suggests that it will actually do so.[2] Indeed, since the extradition process was initiated in 1990, years before the ANC came to power, it seems extremely unlikely that it was designed to serve unstated, ulterior motives of the ANC. Third, South Africa's extradition request contains the explicit assurance the "should Mr JOHANNES BEUKES be extradited to the Republic of South Africa, he will not ... be kept in custody or be brought to trial for a crime or offence other than to serve the sentence imposed for the crime of murder of which he has already been convicted." Affidavit of Daniel Jacobus Rossouw dated June 12, 1991, at 10. There is not only no basis in the record before me to question that representation, but I would have no authority to do so even if there were. The court of appeals in this circuit has made it clear that " '[i]t is not the business of our courts to assume the responsibility for supervising the integrity of the judicial system of another sovereign nation.' " *Ahmad v. Wigen,* 910 F.2d 1063, 1067 (2d Cir.1990) (*quoting Jhirad v. Ferrandina,* 536 F.2d 478, 484–85 (2d Cir.), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976)). Thus, although I find Beukes' claims that he will be deprived of his constitutional and human rights entirely unpersuasive, the more important fact is that

---

1. Beukes testified to these facts before Judge Wilson on April 3, 1995. The transcript is attached to the Government's memorandum in opposition to the petition.

2. The South African authorities apparently do not regard Beukes as a political operative at all.

The extradition papers include their statement that "there is nothing to suggest that Johannes Beukes was involved in clandestine activities as alleged." (Affidavit of Frank Walter Kahn dated February 24, 1995, at 10.)

such claims are not within the limited scope of habeas review. *Id.* at 1066–67.

■ Beukes contends further that the treaty between the United States and South Africa prohibits his extradition because he has not yet served the entire sentence imposed for the crimes he committed in the United States. He argues that extradition must be delayed until he completes a term of supervised release and pays a fine constituting the remainder of his sentence.

Article 4 of the treaty indeed provides for deferred extradition until the imposed sentence is served in its entirety. It reads as follows:

"if the person claimed should be ... under punishment in the territories of the High Contracting State applied to for any other crime or offense, his extradition shall be deferred until ... the full execution of any punishment awarded to him."

Extradition Treaty between the United States of America and the Union of South Africa, art. 4, December 18, 1947, 2 U.S.T. 834, T.I.A.S. 2243. However, only the United States as signatory to an extradition treaty has standing to invoke its provisions to block an extradition. In this case, the United States has not only failed to protest petitioner's extradition, but rather has pursued it. For this reason alone, Article 4 of the treaty cannot afford the relief petitioner seeks.

■ In addition to the above issues that were argued by counsel, Beukes raises some additional points in his *pro se* habeas petition. First, he claims to have been denied due process by the failure of the Bureau of Prisons to advise him of the extradition detainer lodged against him. He claims that this failure impaired his ability to seek relief "through the Interstate Agreement on Detainers and speedy trial rights." (Petition at 6–7.)

The Interstate Agreement on Detainers ("IAD") is inapplicable to the extradition detainer. The history and purpose of the IAD is reviewed at length in *United States v. Ford*, 550 F.2d 732 (2nd Cir.1977), *aff'd sub nom. United States v. Mauro*, 436 U.S. 340,

98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). It was designed to address the many disadvantages and abuses of a system in which one or more jurisdictions had outstanding charges against a prisoner held by another jurisdiction. It allows a prisoner to force the resolution of outstanding detainers and their underlying charges; similarly, it permits a prosecutor to obtain custody of such prisoners for trial more easily. 550 F.2d at 737–41.

The IAD, however, governs the use of detainers as among "states," which are defined to mean the United States, the states themselves, territories or possessions of the United States, the District of Columbia and Puerto Rico. 18 U.S.C. app. p. 586 (1995). It confers no rights on Beukes with respect to the detainer lodged as a result of the extradition request. Even if it did, it would confer rights only with respect to detainers lodged based on "untried" charges. Id. at 586. Beukes is sought by South Africa to serve a sentence for a crime for which he has already been tried.

■ Next, Beukes contends that rights guaranteed to him by the "Uniform Criminal Extradition Act" have been violated. Specifically, he contends that he has been held in custody pending extradition for 108 days, in excess of the 60 days (or extensions for good cause) permitted by the statute.

Beukes' claim implicates 18 U.S.C. § 3188, which requires that persons "committed for rendition to a foreign government" must be "delivered up" and "conveyed out" of the United States within two calendar months after such commitment, unless "sufficient cause is shown ... why such discharge ought not to be ordered." 18 U.S.C. § 3188 (1995). However, where, as here, the accused has instituted and pursued review of his extradition order, that two-month period does not begin to run until there has been a final adjudication of his claims, which of course are still pending. *Jimenez v. United States District Court*, 84 S.Ct. 14, 18, 11 L.Ed.2d 30 (1963). In any event, any delay in effecting extradition that is attributable to proceedings

commenced by him are plainly "sufficient cause" within the meaning of § 3188.[3]

## CONCLUSION

For the foregoing reasons the petition for a writ of habeas corpus is denied. Execution of the extradition is stayed, however, until June 23, 1995, at 1:00 p.m., to allow petitioner to seek a further stay from the court of appeals.

So Ordered.

---

**3.** Beukes also contends that he has been denied access to the courts because he has had insufficient access to legal materials in prison and to "Inmate Counsel." However, a brief review of the record indicates that in fact he was represented by counsel in connection with the extradition proceedings before Magistrate Judge Wilson. Similarly, he has been represented in the habeas proceedings before this Court. Beukes has been afforded all the protections the law allows, and his due process claim is therefore meritless.