**UNITED STATES of America, Plaintiff,**

**v.**

**Hernan BOTERO, Defendant.**

**No. 81–6018–Cr.**

United States District Court,
S.D. Florida,
Miami Division.

March 14, 1985.

Gerald Houlihan, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Neal Sonnett, Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER AFFIRMING PRETRIAL DETENTION

SPELLMAN, District Judge.

This is an appeal of a pretrial detention order issued by the Honorable Samuel J. Smargon, United States Magistrate. For the reasons detailed below, this Court agrees with Magistrate Smargon's conclusion that the Defendant, Hernan Botero, poses a serious risk of flight and that no condition or combination of conditions would reasonably assure his appearance at trial. Accordingly, this Court affirms the order of pretrial detention.

### BACKGROUND

The defendant, Hernan Botero, is a fifty-two year old Colombian citizen. He was educated in the United States and, prior to

the instant indictment, frequently traveled to the United States for business and for pleasure. In February 1981, a federal grand jury, sitting in Miami, Florida, returned an eighteen count indictment charging Hernan Botero and others with a "money laundering" scheme involving some fifty-seven million dollars.[1] At the time that the indictment was returned, Mr. Botero was in Colombia.

Mr. Botero has acknowledged, through counsel, that he was aware of the indictment shortly after it was returned. He refused, however, to return to the United States voluntarily to face these charges. At one point in 1981, it appears that he was willing to return to the United States pursuant to an agreement that he would be permitted to be released on bond. The negotiations for his return broke down when the government insisted that as a condition of his bond, he would not be permitted to leave the United States.

The United States Government formally requested the Government of the Republic of Colombia to extradite Hernan Botero pursuant to the Treaty of Extradition of 1979. Mr. Botero was arrested in Colombia in May 1984, pursuant to the request for extradition, and was detained by his country of origin without bond. He successfully resisted extradition on ten counts of the indictment because the offenses charged in those counts were not subject to extradition under the treaty. Thus, when Mr. Botero was returned by the Colombian Government to the United States in January 1985, he faced seven counts—one count of conspiracy, one count of false statements and five counts of mail fraud.

Mr. Botero has continued to challenge his extradition and the jurisdiction of this Court to try him even on the seven counts that he is presently facing. At his arraignment, he refused to enter any plea as to the seven counts that are before this Court.

The Government moved for pretrial detention pursuant to the Bail Reform Act of 1984 and a detention hearing was held on January 16, 1985 before Magistrate Smargon. In an Order issued the following day, Magistrate Smargon, applying the factors enumerated in 18 U.S.C. § 3142(g), found that Mr. Botero posed a serious risk of flight and that no condition or combination of conditions would reasonably assure his appearance at trial. He therefore ordered that Mr. Botero be detained without bond.

Mr. Botero moved for reconsideration and on February 12, 1985 further hearings were held before Magistrate Smargon. At that time, counsel for Mr. Botero presented additional conditions of release which he argued would reasonably assure Mr. Botero's appearance at trial. Magistrate Smargon, however, again found that these conditions were inadequate and that pretrial detention was warranted.[2] The pretrial detention order has been appealed to this Court.

Mr. Botero has raised two primary challenges to the order. First, he argues that application of the Bail Reform Act violates the constitutional prohibition against *ex post facto* laws. Next, he argues that even if the statute can constitutionally be applied to him, the Magistrate erred in finding that he posed a substantial risk of flight and that no conditions of release could reasonably assure his appearance at trial.

### EX POST FACTO

Botero contends that application of the Bail Reform Act of 1984 to him violates the

---

1. The Government subsequently dismissed one count of the indictment which alleged that Mr. Botero and others imported cocaine into this country in violation of 21 U.S.C. § 952(a).

2. The detention order issued by Magistrate Smargon on January 17, 1985 erroneously included the application of the rebuttable presumption under 18 U.S.C. § 3142(e) that no condition or combination of conditions will reasonably assure the defendant's appearance as

required. The statutory presumption, of course, is not applicable because Mr. Botero is not charged with any offense to which it applies. During the February 12th hearing Magistrate Smargon stated that the reference to the statutory presumption was a typographical error and was not a factor in the issuance of the detention order. A review of transcript of the January 16, 1985 hearing and the oral order issued by Magistrate Smargon at that time confirms this.

prohibition against *ex post facto* laws because the law in effect at the time of the alleged offense permitted bail in his situation.

At least two other courts have visited this issue and have found that the application of the pretrial detention statute to defendants whose alleged crimes occurred before the active date of the statute is not violative of the *ex post facto* provision of the Constitution. *See United States v. Payden*, 598 F.Supp. 1388, 1391–92 (S.D.N. Y.1984); *United States v. Hazzard*, 598 F.Supp. 1442, 1454–55 (N.D.Ill.1984). This Court agrees.

■ The *ex post facto* prohibition applies to "any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28, 101 S.Ct. 960, 963, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri*, 4 Wall (71 U.S.) 277, 325–326, 18 L.Ed. 356 (1867)). There is no *ex post facto* violation, however, "if the change effected is merely procedural, and does 'not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.'" *Weaver*, 450 U.S. at 29 n. 12 (quoting *Hopt v. Utah*, 110 U.S. 574, 590, 45 S.Ct. 202, 210, 28 L.Ed. 262 (1884)).

■ The first step in analyzing whether the *ex post facto* clause prohibits the application of the Bail Reform Act of 1984 to Mr. Botero is to determine whether the pretrial detention provisions of the statute are punitive. If the provisions are merely procedural or regulatory rather than punitive, there is no *ex post facto* violation even if the operation of the Act disadvantages the defendant.

Although the differences between punitive and regulatory measures can be elusive, the Supreme Court has offered some guidance in this area. In the absence of a showing of express intent by the government to punish, the relevant inquiry will usually turn on "whether an alternative purpose to which [the restriction] may ra-

tionally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Schall v. Martin*, —— U.S. ——, 104 S.Ct. 2403, 2413, 81 L.Ed.2d 207 (1984) (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963)). Moreover, "if a particular condition or restriction … is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 1874, 60 L.Ed.2d 447 (1979).

■ The legislative history of the Bail Reform Act clearly indicates that pretrial detention was intended to prevent flight and to protect the safety of the community. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 8 (1984), U.S.Code Cong. & Admin.News 1984, 1. S.Rep. No. 147, 98th Cong., 1st Sess. 34–35 (1983); S.Rep. No. 317 97th Cong., 2d Sess. 21 (1982). Pretrial detention was not intended to promote either of the "traditional aims of punishment—retribution and deterrence." *Kennedy v. Mendoza-Martinez*, 372 U.S. at 168, 83 S.Ct. at 567. Similarly, it was not designed to rehabilitate, another purpose frequently associated with punishment. Rather, the Act reaffirms that pretrial detention should not be construed as modifying the presumption of innocence, 18 U.S.C. § 3142(j) and provides that detainees must be confined, to the extent practicable, separate from those persons who have been convicted of crimes. 18 U.S.C. § 3142(i)(2).

In the present case, the "alternative purpose" for which pretrial detention has been invoked is to protect the judicial process by compelling the defendant's attendance at trial. Certainly, the detention of a defendant to prevent flight is rationally related to this purpose.

■ Nor is the pretrial detention authorized by the statute "excessive" in relation to this "alternative purpose." A judicial officer can only order pretrial detention based on substantial risk of flight if he or she finds that no condition or combination of conditions of release would reasonably

assure the defendant's appearance at trial. Thus, pretrial detention can only be ordered after a judicial officer has concluded that it is the only way to achieve the "alternative purpose." Although the statute does not place explicit limits on the length of pretrial detention, the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, ensures that a defendant will be brought to trial within a reasonable time and that a person who is detained "shall be accorded priority" in scheduling trials.

■ In light of this, the Act must be considered a regulatory measure rather than penal. It does not make conduct criminal which was innocent when done. It does not change the elements of the crime nor does it deprive a defendant of any defenses. Accordingly, application of the Act to a defendant whose alleged crimes were committed before the Act was enacted does not violate the constitutional prohibition against *ex post facto* laws.

Indeed, the Court notes that Mr. Botero may not even be disadvantaged by the application of the Bail Reform Act of 1984. Mr. Botero is being detained because the Magistrate found, without the aid of any statutory presumptions, that he posed a substantial risk of flight. He is not being detained under the provisions of the statute providing authority to the courts to detain individuals prior to trial to protect society from particularly dangerous offenders who, if released, might pose a threat to the safety of others or engage in conduct endangering the safety of the community. While this latter provision does create new authority for detention, pretrial detention to prevent flight is not a new concept and even under the previous bail statute courts have upheld a complete denial of bail when they have found that there is no other way to reasonably assure a defendant's appearance at trial. *See e.g., United States v. Abrahams,* 575 F.2d 3 (1st Cir.), *cert. denied,* 439 U.S. 821, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978); *United States v. Ramirez,* 589 F.Supp. 137 (D.Minn.1984); *United States v. Meinster,* 481 F.Supp. 1117 (S.D.Fla. 1979).

In *Meinster,* Judge King held that in order to hold a defendant without bond:

> [t]he government must demonstrate by the totality of the circumstances in the case and the evidence adduced in the bond hearing that there is no reasonable assurance that the defendant will continue to appear for trial and at sentencing if convicted.

481 F.Supp. at 1122.

The standard provided for in the Bail Reform Act of 1984 is virtually identical to that of *Meinster,* since it permits the court to enter a detention order only if it finds, "that no condition or combination of conditions will reasonably assure the appearance of the person as required." Thus, the new Act does not newly subject Mr. Botero to detention; it merely codifies the existing authority to detain persons who are serious flight risks.

## APPLICATION OF THE STATUTE

Section 3142(g) sets forth the factors a Court must consider in determining whether a defendant should be detained pretrial. These factors are:

(1) the nature and circumstances of the offense charged including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

(A) his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record considering appearances at court proceedings; and

(B) whether, at the time of the current offense or arrest, he was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal State or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release ...

When these factors are considered, it is plain to this Court that Mr. Botero poses a serious risk of flight.

*Nature and Circumstances of the Offense*

The defendant is charged with a "money laundering" scheme involving some fifty-seven (57) million dollars over a ten month period. According to the Government, Hernan Botero entered into an agreement with employees at the Landmark First National Bank to open five fictitious accounts. Large amounts of cash, in excess of $10,-000 for each deposit, were to be deposited in these accounts. Hernan Botero and his brother Roberto allegedly directed the distribution of these funds through wire transfers and conversion into cashier's checks. No currency transaction reports were ever filed with the Internal Revenue Service.

The maximum sentence Hernan Botero could receive if he were convicted on all seven counts he is presently facing is thirty-five years.

The defendant is not charged with any violations of the narcotics laws which would give rise to the presumption of section 3142(e). Section 3142(e) provides, in part, that there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community if the judicial officer finds there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.) [or] section 1 of the Act of September 15, 1980 (21 U.S.C. 955a)." However, the Government has consistently maintained—and this Court agrees—that "money laundering" is an integral part of the narcotics business. The same factors which create an unusually high risk of flight in narcotics offenses and which form the basis for the statutory presumption are present here—the business is extremely lucrative and those involved have established substantial ties outside the United States. Thus, persons involved in money laundering, just as those involved in narcotics trafficking, have the resources and foreign contacts to escape to other countries to avoid prosecution.

*Weight of the Evidence*

The weight of the evidence against Hernan Botero is strong. Hernan Botero's brother, Roberto Botero, was tried and convicted on substantially the same evidence that the Government will offer against Hernan Botero. During the trial, the Government's two main witnesses testified that Hernan Botero was the mastermind of the entire laundering scheme. Moreover, even Roberto Botero acknowledged that Hernan was involved with the five fictitious accounts used to transfer the 57 million dollars.

*History and Characteristics of the Person*

Hernan Botero is a prominent Colombian citizen of enormous wealth and stature. He has no previous arrests and until this case, enjoyed a fine reputation in Colombia.

*Physical and Mental Condition*

Mr. Botero does not have a history of physical or mental problems.

*Family Ties*

The only family ties that Hernan Botero has in the United States are his brother, Roberto Botero; and Hernan's family that recently relocated to South Florida to be near him during these proceedings. As pointed out above, Roberto Botero has been convicted of crimes charged in the same indictment and is presently released on bond pending appeal.

*Employment*

Hernan Botero has never been employed in the United States. His businesses and other financial resources are all based in Colombia.

*Financial Resources*

The Botero family has vast financial resources in Colombia. They own a grain importing business, a fashionable Medellin

hotel and a professional soccer team. Although these assets are in corporate or family names, Hernan Botero testified that he "controlled" a number of these interests. The only property Mr. Botero owns in the United States is the subject of a tax lien.

*Length of Residence in the Community*

Prior to the instant indictment, Mr. Botero and his immediate family would come to South Florida three or four times a year. He has not been in the United States since the instant indictment was returned in 1981.

*Community Ties*

At this time, Mr. Botero has no ties to this community.

*Past Conduct and Record of Past Appearances*

Mr. Botero admits that he has known about the charges pending against him and has purposely absented himself from this country because of these charges. He has resisted extradition and continues to dispute the validity of the extradition process. He has refused to enter a plea and refuses to recognize this Court's jurisdiction. Because Mr. Botero was only extradited on seven counts of the indictment, he continues to be a fugitive on the remaining ten counts.

Mr. Botero strenuously argues that his fight against extradition cannot be used by this Court in considering whether there is a serious risk that he will flee prior to trial. The defendant points out that he did not leave the United States when the indictment was returned—he was already in his native Colombia and simply sought to avail himself of his legal rights in Colombia. According to Mr. Botero, when he learned the Government of Colombia was going to comply with the request by the United States for his extradition, he contacted an attorney who advised him to fight the extradition. The attorney advised him that a waiver of extradition would expose him to trial on all seventeen counts of the indictment, whereas even if the extradition treaty were enforced, Mr. Botero would face fewer charges if he resisted extradition.

While Mr. Botero may now have entirely legitimate tactical reasons for resisting extradition, the fact remains that the defendant has absented himself from this jurisdiction and has refused to answer these charges. This Court recognizes that Colombia is Mr. Botero's native country. But prior to the indictment in this case, the defendant frequently travelled to the United States for business and travel. It is clear that Mr. Botero was aware of the charges pending in this country and that his motivation for not voluntarily returning over the past few years was to avoid facing these charges. Certainly, these facts can and should be considered by this Court in determining whether he poses a serious risk of flight. At a minimum, Mr. Botero's refusal to voluntarily return is indicative of a mental state which could easily rationalize flight on legal, moral or intellectual grounds.

 In the context of determining whether a defendant poses a substantial risk of flight, this Court does not find any meaningful distinction between a person who left the country when he learned of pending charges and one who already outside the country refuses to return to face these charges. The intent is the same—the avoidance of prosecution. *See Jhirad v. Ferrandina,* 536 F.2d 478, 483 (2d Cir. 1976) (finding an intent to flee from prosecution when a person declines to return to his native country to face charges). *See also United States v. Ballesteros-Cordova,* 586 F.2d 1321, 1323 (9th Cir.1978) (to prove that a person intended to escape prosecution, the Government "need only prove that he was wanted by the police and that he failed to submit to arrest").

*Nature and Seriousness of the Danger to the Community*

This Court does not find that Mr. Hernan Botero poses a danger to the community if he were released pending trial. The Government has suggested that it has reason to believe that Mr. Botero's personal

safety may be in danger and therefore his presence in the community could be potentially dangerous to those in proximity to him. Because the Court is convinced of its conclusion without considering this factor, it has declined to require any details of this alleged danger.

*Conclusion as to Risk of Flight*

█ When all of these factors are considered, it is clear that Hernan Botero poses a substantial risk of flight. Notwithstanding his past history of good character, he is a man facing serious charges with possible penalties of thirty-five years imprisonment. The evidence against him apparently is strong—his brother was convicted on substantially the same evidence. He has not been in the United States since 1981 and even then he did not have significant ties to this country. For three years he attempted to avoid prosecution by not returning to this country. Even after his extradition, he continues to challenge the jurisdiction of this Court as to seven counts. As to the remaining counts, he continues to be a fugitive. He has considerable means and foreign connections which would make it possible for him to escape to other countries with relative ease in order to avoid prosecution for offenses punishable by lengthy prison sentences.

Finding that Mr. Botero poses a serious risk of flight does not, however, end this Court's inquiry. Pretrial detention can only be ordered if the Court finds that no condition or combination of conditions will reasonably assure the appearance of the defendant at trial.

*The Proposed Conditions*

The defendant has proposed a combination of conditions of release which include the following: a two million dollar personal surety bond secured by commercial property in Florida and Colombia, the home of his daughter-in-law's parents in Massachusetts and Mr. Botero's home in Medellin, Colombia; release to the custody of a person approved by the United States Attorney and deputized by this Court who shall maintain around the clock custody of Mr. Botero; a curfew which would be tanta-mount to house arrest; an electronic monitoring device; and execution of a waiver of extradition applicable to any country to which he may flee.

█ Given the serious risk of flight posed by Mr. Botero, these conditions are inadequate to reasonably assure his appearance at trial. The property in the United States offered to collateralize the bond may be worth a considerable amount of money, but a man of Mr. Botero's means could flee the jurisdiction and then reimburse those persons whose property would be forfeited. Repaying those family and friends would be an incidental cost compared to his freedom. This Court will not consider property outside the jurisdiction of the Court of the United States as collateral.

█ Similarly, the defendant's proposal of a strict curfew and house arrest, even under twenty-four hour guard and an electronic tracking system is inadequate to reasonably assure this Court of Mr. Botero's future appearance. It must be remembered that wherever Mr. Botero stays in the Miami area, he will be only minutes away from a private airfield. Thus, even a short delay in notifying the authorities would permit Mr. Botero to successfully flee. Mr. Botero need only wait for the appropriate time—when his guard was out of the room, asleep or had his attention elsewhere—to get the head start he would need. Moreover, it is not entirely clear what authority and what duty a private guard would have to prevent Mr. Botero's flight. Certainly, this Court would be reluctant to hold such a guard in contempt if it appeared that he was unable to physically prevent Mr. Botero's flight.

█ Finally, this Court doubts that a waiver of extradition executed by Mr. Botero under these circumstances could ever be considered voluntary and enforceable. Mr. Botero contests the jurisdiction of this Court to conduct these proceedings. Any waiver he executes here in an effort to secure his release would have to be considered suspect.

In sum, at this point, the Court finds that even the stringent conditions proposed by the defense would not be sufficient to reasonably assure Mr. Botero's appearance at trial. The order of pretrial detention is therefore affirmed.